[No. B184504. Second Dist., Div. Four. Oct. 11, 2006.]

JOSE ALVAREZ et al., Plaintiffs and Appellants, v.
THE MAY DEPARTMENT STORES COMPANY, Defendant and
Respondent.

## COUNSEL

Arias, Ozzello & Gignac, H. Scott Leviant, Mike Arias, Mark A. Ozzello; Law Offices of Jeffrey P. Spencer and Jeffrey Spencer for Plaintiffs and Appellants.

Wasserman, Comden & Casselman, John S. Curtis; Law Offices of Julia Azrael, Julia Azrael; and David E. Martin for Defendant and Respondent.

## OPINION

**SUZUKAWA, J.**—Plaintiffs and appellants,[1] 56 past and present "Area Sales Managers" (ASM's) employed by defendant and respondent The May

---

[1] Plaintiffs and appellants are: Jose Alvarez, Margo Arias, Maria Bocanegra, Vincent Bonnemere, Cynthia Byrd, Chester Espino, Andrea Fannon, Kim Gensch, Nicole Giebel, Lynn Halo-Gerber, Paul Harris, Selma Hovsepian, Ronald Jackson, Alice Leedom, Leah Lindberg, Margaret Mackinnon, Amber Polo, Margaret Sommer, Sarah Statz, Eileen Trujillo-Cameron, Roy Valdivia, Laura Zarate, Kylie Tigard, Dinafay Crandell, Kimberly DeWolfe, Matthew Finch, Timothy Frank, Michael Jalaty, Chrystine Johnson, Harold Katzman, Cathy Knox, Cynthia Madison, Angelica Madrigal, Tasha Southerland, Debi Brewer, James Gardner, Paula Gardner, Richard Hager, Belinda McCauley, Steven Pitts, Shane Price, Gerardo Torres, Kelly Tran, Leslie Garcia, Omar Leiva, Kimberly Frye, Stacey McClure, Yvonne Pfrimmer-Lopez, Zora Zizich, Stephanie Bunch, Gina Marchand, Bonnie Brown, Steven Esperanza, Carey Holland, Claudette Michaud, and Darren Muth.

Department Stores Company (respondent), alleged both individual and class action claims for failure to pay overtime compensation (Lab. Code, §§ 1194, 1198), conversion, violation of the unfair practices law (Bus. & Prof. Code, § 17200 et seq.), and violation of the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.). Based on the doctrine of collateral estoppel, the trial court sustained without leave to amend respondent's demurrer to the complaint's class action allegations and this appeal followed.[2]

Appellants seek reversal of the order, claiming that the doctrine of collateral estoppel is inapplicable to an order denying class certification in another lawsuit brought by other plaintiffs because absent putative class members are not bound prior to the certification of a class. Alternatively, appellants contend that the doctrine of collateral estoppel was erroneously applied to the facts of this case. For the reasons set forth below, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was initially filed in September 2003. It is one of several lawsuits filed by appellants' counsel against respondent on behalf of ASM's who were classified as "exempt" employees, and thus not paid overtime wages, although they worked more than 40 hours per week.

*The* Gorman *Case*

In July 1997, appellants' counsel filed a class action against respondent in Los Angeles County Superior Court (*Gorman v. Robinsons-May, Inc.* (1999, No. BC174606) (*Gorman*)). The purported class in *Gorman* consisted of approximately 612 "current and former employees of Defendant Robinsons Department Stores within the states of California, Arizona and Nevada, holding the position of a salaried manager designated by Robinsons as an Area Sales Manager within the last three (3) years." The claims arose out of the alleged "illegal designation of Area Sales Managers as exempt employees and the failure of Defendants, and each of them, to pay Area Sales Managers overtime compensation." The complaint alleged: failure to pay overtime compensation in violation of the Labor Code, unfair business practices (Bus. &

---

[2] Although an order sustaining a demurrer without leave to amend is not an appealable order, "an order, whatever form it may take, which has the effect of denying certification as a class action, is an appealable order. [Citations.]" (*Morrissey v. City and County of San Francisco* (1977) 75 Cal.App.3d 903, 907 [142 Cal.Rptr. 527].)

Prof. Code, § 17200 et seq.), fraud, and negligent misrepresentation, and prayed for compensatory damages and injunctive relief. Generally, it claimed that the ASM's performed many of the same functions as the nonexempt employees, but were told that they were not entitled to overtime pay.

The trial court denied class certification in *Gorman* in December 1998, stating that the plaintiffs had failed to demonstrate a community of interest or an ascertainable class and that the proposed class representatives were unsuitable because they had unsatisfactory employment histories.

*The* Duran *Case*

In September 1999, appellants' counsel, in association with other attorneys, filed another class action in San Bernardino County Superior Court against respondent on behalf of ASM's, alleging causes of action for failure to pay overtime wages, unlawful business practices, and conversion (*Duran v. Robinsons-May, Inc.* (No. RCV42727) (*Duran*)). The complaint in *Duran* alleged that all ASM's performed the same duties and the job is a standardized one completely lacking in independent discretion.

After an evidentiary hearing, the trial court denied a motion to certify the class in *Duran* with respect to the Labor Code and conversion causes of action. The Court of Appeal affirmed the order in an unpublished opinion filed April 18, 2003. (*Duran v. Robinsons-May, Inc.* (Apr. 18, 2003, No. E031288).) The Court of Appeal opinion held that the declarations submitted in support of the motion established that the 1600 class members' interests were so dissimilar that "it would not be proper to certify plaintiffs as class representatives for a class whose members are so dissimilar in their interests. Common questions of fact could not predominate."

*This Case*

In September 2003, appellants' counsel filed the present complaint on behalf of current and/or former ASM's against respondent. It alleged that respondent intentionally and improperly designated them as exempt to avoid payment of overtime wages and other benefits.

Respondent demurred to the third amended complaint (TAC) based on the grounds that an order denying certification of the same class was issued in *Duran* and thus appellants were barred from relitigating the issue under the

doctrine of collateral estoppel. In addition, respondent claimed that the claims arising before February 1999 were barred by the statute of limitations.

The demurrer was argued on May 19, 2005, and taken under submission. On June 27, 2005, the court issued an order sustaining the demurrer without leave to amend as to the class action allegations and with leave to amend as to the claims arising before February 1999. The trial court's order stated, inter alia, "Two cases preceded the filing of this case, *Gorman* and *Duran*. Both cases sought to certify a class of current and former ASMs of Robinsons-May. . . . [¶] Plaintiffs argue that under federal law, the denial of class certification is never binding on absent putative class members . . . . Defendant's reply persuasively refutes plaintiffs' argument . . . . [¶] Plaintiffs do not argue that defendant failed to establish the required elements for application of collateral estoppel ¶ except privity . . . . Defendants persuasively respond to plaintiffs' argument . . . ."

The court also ordered all proceedings stayed once appellant filed a notice of appeal from the order on the demurrer.

## CONTENTIONS ON APPEAL

Appellants contend that the court erred in sustaining the demurrer because: (1) the class allegations cannot be resolved by way of a demurrer; (2) the *Gorman* and *Duran* cases had no plaintiffs in common with this case and thus the refusal in those cases to certify the class is not binding; (3) the principles of res judicata are inapplicable to this case; (4) respondent's issue preclusion argument was rejected in the *Duran* case by the Court of Appeal for the Fourth Appellate District; and (5) respondent's demurrer was frivolous and based upon noncitable authority.

## DISCUSSION

A. *The Resolution of Class Certification on Demurrer*

■ Code of Civil Procedure section 382 authorizes a class suit where a party can establish an ascertainable class and a well-defined community of interest. The community of interest requirement is satisfied by a showing of "(1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Sav-On Drug Stores, Inc. v. Superior*

*Court* (2004) 34 Cal.4th 319, 326–327 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On*); see *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104 [131 Cal.Rptr.2d 1, 63 P.3d 913].)

" 'Class actions will not be permitted . . . where there are diverse factual issues to be resolved, even though there may be many common questions of law.' [Citation.] '[A] class action cannot be maintained where each member's right to recover depends on facts peculiar to his case.' " (*Basurco v. 21st Century Ins. Co.* (2003) 108 Cal.App.4th 110, 118 [133 Cal.Rptr.2d 367]; see *Acree v. General Motors Acceptance Corp.* (2001) 92 Cal.App.4th 385, 397 [112 Cal.Rptr.2d 99].)

When an appellate court reviews a ruling on demurrer, its only task "is to determine whether the complaint states a cause of action." (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) "An appellate court must affirm if the trial court's decision to sustain the demurrer was correct on any theory. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)" (*Kennedy v. Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808 [50 Cal.Rptr.2d 736].)

■ Trial courts properly and routinely decide the issue of class certification on demurrer. "When class certification is challenged by demurrer, 'the trial court must determine whether "there is a 'reasonable possibility' plaintiffs can plead a prima facie community of interest among class members . . . ." [Citation.] " 'The ultimate question in every case of this type is whether, given an ascertainable class, the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] If the ability of each member of the class to recover clearly depends on a separate set of facts applicable only to him, then all of the policy considerations which justify class actions equally compel the dismissal of such inappropriate actions at the pleading stage." [Citation.]' " (*Newell v. State Farm General Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101 [13 Cal.Rptr.3d 343], quoting *Silva v. Block* (1996) 49 Cal.App.4th 345, 349–350 [56 Cal.Rptr.2d 613].)

It may be proper at the pleading stage to strike class allegations if the face of the complaint and other matters subject to judicial notice reveal the invalidity of the class allegations. (*Canon U.S.A., Inc. v. Superior Court* (1998) 68 Cal.App.4th 1, 5 [79 Cal.Rptr.2d 897].) An evidentiary hearing on the appropriateness of class litigation is not necessary unless there is a " 'reasonable

possibility' " that the plaintiff can establish a community of interest and ascertainable class. (*Ibid.*)

B. *The Effect of the* Duran *Ruling*

 1. Duran *Case*

The *Duran* complaint defined the potential class as "All current and former Employees of Robinson-May, Inc., holding the position of a salaried manager designated by Robinson-May, Inc. as an Area Sales Manager, and who worked more than eight (8) hours in any given day and/or more than forty (40) hours in any given week, during the period September 9, 1995 to the present and who were not paid overtime compensation pursuant to applicable *Cal. Labor Code* requirements."

Similarly, the TAC in this case defines the potential class as "all current and former employees of [respondent], holding the position of a salaried manager designated by [respondent] as an 'Area Sales Manager' (sometimes referred to herein as 'ASM'), and who worked more than eight (8) hours in any given day and/or more than forty (40) hours in any given week and who were not paid overtime compensation pursuant to applicable *Cal. Labor Code* requirements."

The complaint in *Duran* alleged that ASM's should not have been classified as exempt employees because they spent more than 50 percent of their time on nonmanagerial tasks and thus are entitled to overtime pay. The *Duran* plaintiffs contended that all ASM's perform the same standardized work as dictated by Robinsons-May. They claimed ASM's lack discretion and independence in merchandising, hiring, and supervising decisions. The declarations submitted by each of the parties (38 from plaintiff and 60 from defendant, in addition to excerpts from numerous depositions) ranged from those who worked only on nonexempt tasks to those who regarded their work as executive and discretionary in nature. The Court of Appeal held that "[I]f a similar split in opinion exists company-wide among ASMs, it would not be proper to certify plaintiffs as class representatives for a class whose members are so dissimilar in their interests. Common questions of fact could not predominate among the 1600 ASMs."

In this case, as in *Duran*, the TAC alleges that respondent required the ASM's to work more than 40 hours per week, but they were all classified as

exempt and received no overtime pay. Appellants contend they spend more than 50 percent of their time performing nonexempt duties, that their job duties are standardized, and that they lack discretion or independent judgment in merchandising, hiring, and supervising decisions.

### 2. *Collateral Estoppel*

■ Collateral estoppel is a doctrine which prevents relitigation of issues previously argued and resolved in a prior proceeding. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223].) In order to apply this principle: (1) the issue must be identical to that decided in the prior proceeding; (2) the issue must have been actually litigated in the prior proceeding; (3) the issue must have been necessarily decided in the prior proceeding; (4) the decision must have been final and on the merits; and (5) preclusion must be sought against a person who was a party or in privity with a party to the prior proceeding. (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481 [111 Cal.Rptr.2d 870], citing *Lucido, supra,* 51 Cal.3d 335.)

"[I]n deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098] (*Clemmer*).)

■ The initial question we must answer is the following: What is the precise nature of appellants' right at issue here? Our decision will not eliminate appellants' substantive right to bring their lawsuit. Instead, it could potentially deny them the ability to serve as representatives of other litigants. The distinction may be crucial when we balance appellants' due process rights against the competing interests promoted by the doctrine of collateral estoppel. If the right to proceed as a class plaintiff is a property right, we must keep in mind the general principle "in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." (*Hansberry v. Lee* (1940) 311 U.S. 32, 40 [85 L.Ed. 22, 61 S.Ct. 115] (*Hansberry*).)

Appellants assert the right to be a class representative is inextricably tied to the right to pursue a personal claim. They argue that the power of the class

action lawsuit provides the individual plaintiff with the means to successfully combat a social injustice that might otherwise go unabated. They conclude that "a due process right to be a class representative must be recognized in light of the fact that the mere assertion of class allegations causes a defendant to recognize greater potential risk . . . in an individual litigant's claims, a *substantive* effect."

Respondent argues that the interest in the right to sue as a class is not a protected property right. It argues while the courts have recognized that class actions facilitate the court's ability to manage a lawsuit and achieve substantial justice in a particular case, the tool is subject to appropriate limitations.

In comparing other forms of representative lawsuits, our Supreme Court has reached the same conclusion. In *Hogan v. Ingold* (1952) 38 Cal.2d 802 [243 P.2d 1], the court discussed the rights of a shareholder who complained that limitations placed on her ability to bring a derivative suit deprived her of a valuable property right. The court wrote: "This contention cannot be sustained; a person has no property right in being appointed or in acting on his own nomination as a guardian *ad litem*. He may nominate himself but he cannot compel the court to accept his nomination; he has no property right to be accepted by the court to institute and maintain an action in the right of another on terms beyond the control of the court or the Legislature." (*Id.* at p. 809.)

In *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 [46 Cal.Rptr.3d 57, 138 P.3d 207], referring to the right under Business and Professions Code section 17200 to bring lawsuits as a representative of the public, the court cited *Hogan* and affirmed its holding that "the interest in suing on another's behalf is not a property right beyond statutory control." (39 Cal.4th at p. 233.)

██ Appellants give no reason why a class plaintiff has any greater right to serve as a representative than a shareholder in a derivative action or a representative of the public in an unfair competition suit. That appellants cannot is not surprising. There is no such right. We conclude that there is a distinction between using a prior ruling to bar a litigant from receiving a hearing on the merits and applying a prior decision to prevent a litigant from proceeding as a class representative.

Nonetheless, appellants assert that the holding in *Duran* cannot bar their attempt to certify a class. They claim "[i]t is an established rule of law that, in an action not certified as a class, the outcome of that action is binding only on the named parties." They urge that is the rule "throughout the entire country regarding the res judicata effect of denial of certification on absent

putative class members." In particular, appellants cite *Bittinger v. Tecumseh Products Co.* (6th Cir. 1997) 123 F.3d 877, 880–881 (*Bittinger*). Appellants overstate their case.

In *Bittinger*, the plaintiffs, acting individually and on behalf of a class of former employees, filed suit. The court granted the defendant's motion for summary judgment, *but did not reach the question of class certification.* (*Bittinger, supra*, 123 F.3d at p. 879.) Bittinger, who was not an original plaintiff, brought suit on behalf of the same class. The trial court dismissed the class claims, relying on the doctrine of res judicata. The appellate court reversed, concluding that Bittinger could not be bound by the prior decision.

*Bittinger* does not assist appellants because the court did not hold that absentee class members may never be bound by a prior ruling denying class certification. Nor did the court hold that class certification was necessary to bind absent class members. The case merely affirmed the basic principles of issue preclusion. In order to prevent the relitigation of an issue, that issue must have been decided in the prior proceeding, and the class issue was not decided in the first action. The other cases cited by appellant provide no support for their view. None of the cases deals with the question whether a court may enforce a prior class decision on litigants in a subsequent action.

■ Appellants cite the principle we acknowledged above and the United States Supreme Court reiterated in *Richards v. Jefferson County* (1996) 517 U.S. 793 [135 L.Ed.2d 76, 116 S.Ct. 1761], that it would violate the due process clause of the Fourteenth Amendment to bind a party to a judgment rendered in a prior lawsuit in which the party was not present or adequately represented. However, the *Richards* court recognized there are exceptions to the general rule, as outlined in *Hansberry*. "To these general rules there is a recognized exception that, to an extent not precisely defined by judicial opinion, the judgment in a 'class' or 'representative' suit, to which some members of the class are parties, may bind members of the class or those represented who were not made parties to it." (*Hansberry, supra*, 311 U.S. at p. 41.) Appellants are incorrect when they assert that absent class members may never be bound by prior litigation.

Respondent directs us to a federal case which deals squarely with the issue whether collateral estoppel may be applied in the class certification arena. In *In re Bridgestone/Firestone, Inc., Tires Products* (7th Cir. 2003) 333 F.3d 763 (*Bridgestone/Firestone*), the plaintiffs attempted to certify a national class in the district court. The trial court granted certification, but its decision was reversed on appeal. The plaintiffs then filed a number of suits in various jurisdictions seeking to certify the same class. When one state court certified

the class, the defendants, pursuant to title 28 United States Code section 2283, sought an anti-class-action injunction from the federal court to enforce its earlier ruling.

 In analyzing the issue, the court distinguished between nonclass and class situations. " 'Virtual representation,' a doctrine that we disapproved in *Tice v. American Airlines, Inc.*, 162 F.3d 966 (7th Cir. 1998), would permit the outcome of one non-class suit to control another if the plaintiffs are similarly situated; *Tice* holds, to the contrary, that, outside the domain of class actions, precedent rather than preclusion is the way one case influences another. Our suit, by contrast, was commenced as a class action, and one vital issue was litigated and resolved on a class-wide basis: whether a *national* class is tenable. Absent class members are bound provided that the named representatives and their lawyers furnished adequate representation, which they did." (*Bridgestone/Firestone, supra*, 333 F.3d at p. 769.)

The plaintiffs in *Bridgestone/Firestone* argued that absent members could not be bound because they had not been provided notice and an opportunity to opt out of the certification decision. The court stated: "[N]o statute or rule requires notice, and an opportunity to opt out, before the certification decision is made; it is a post-certification step." (*Bridgestone/Firestone, supra*, 333 F.3d at p. 769.) The court concluded, "[e]very person included in the district court's class definition still has the right to proceed on his own. What such a person now lacks is the right to represent a national class of others similarly situated; that's the upshot of a fully contested litigation in which every potential class member was adequately represented on this issue." (*Ibid.*)

 We agree with the federal court's reasoning. When a prevailing party seeks to enforce a ruling denying class certification against an absent putative class member, the general principles of collateral estoppel apply. Those principles ensure that the absent party's interest was adequately represented in the prior proceeding. Thus, we turn to the facts of our case, noting that appellants argue they are not in privity with the *Duran* plaintiffs and the *Duran* court did not decide the identical issue.

 Collateral estoppel requires that the party in the earlier case have interests sufficiently similar to the party in the later case, so that the first party may be deemed the "virtual representative" of the second party. (*Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1070–1073 [71 Cal.Rptr.2d 77] (*Citizens*).) Or the first party must be acting in a representative capacity for the second party. (*Gates v. Superior Court* (1986) 178 Cal.App.3d 301, 307 [223 Cal.Rptr. 678].) "The emphasis is not on a concept of identity of parties, but on the practical situation. The question is whether the non-party is sufficiently close to the original case to afford

application of the principle of preclusion. [Citations.]" (*People ex rel. State of Cal. v. Drinkhouse* (1970) 4 Cal.App.3d 931, 937 [84 Cal.Rptr. 773].)

 The *Duran* complaint and the TAC allege respondent engaged in the same general misconduct concerning the same policies and procedures. Both complaints allege the misconduct took place during approximately the same time period. The parties sought certification of the same class of employees. In fact, in the trial court, appellants conceded that the class in the *Duran* action included, by definition, appellants. The *Duran* plaintiffs and appellants sought class certification using the same attorneys and there is no allegation that the representation provided to the plaintiffs in *Duran* was inadequate. Although the causes of action are not identical, the principle of collateral estoppel does not depend on the legal theory used but the primary right asserted. (*Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 992 [95 Cal.Rptr.2d 837]; *Johnson v. American Airlines, Inc.* (1984) 157 Cal.App.3d 427, 432 [203 Cal.Rptr. 638].) The primary right asserted in each case was the right to litigate claims in a class action lawsuit.

 Appellants cite *Rodgers v. Sargent Controls & Aerospace* (2006) 136 Cal.App.4th 82 [38 Cal.Rptr.3d 528] for the proposition that the same counsel's representation of different plaintiffs in successive actions is a factor this court should not consider in determining issues of privity or adequacy of representation. Appellants read too much into the *Rodgers* opinion. The court decided "[t]hat appellant is represented by the same counsel as were the plaintiffs in the prior actions does not, we conclude, suffice to extend the doctrine of privity *to his case.*" (*Id.* at p. 93, italics added.) The *Rodgers* court did not hold that the identity of counsel is never relevant. We conclude that similarity of counsel is one factor that may be considered on the issue of whether a nonparty's interest was truly represented in the first lawsuit.

Appellants do not claim that their interests were not adequately represented in the *Duran* case. Indeed, it would be difficult to make such an argument. In *Duran*, the trial court considered 38 declarations of ASM's presented by the plaintiffs, 60 declarations of ASM's presented by the defendants, declarations by other employees, and deposition testimony offered by both parties. Appellants do not argue that there is any evidence or argument that the *Duran* plaintiffs failed to present.

 "In the final analysis, the determination of privity depends upon the fairness of binding appellant with the result obtained in earlier proceedings in which it did not participate." (*Citizens, supra,* 60 Cal.App.4th at p. 1070.) "Whether someone is in privity with the actual parties requires close examination of the circumstances of each case." (*People v. Henderson* (1990) 225 Cal.App.3d 1129, 1151 [275 Cal.Rptr. 837].)

■ In analyzing the facts, we conclude the *Duran* plaintiffs were the "virtual representatives" of appellants. The only difference we can discern between the parties is the name of the representative plaintiff. The interested parties, their claims, and their counsel are the same. We also examine whether the first party had the same interest as the precluded party and the motive to present the same claim. (*Clemmer, supra*, 22 Cal.3d at p. 877.) The *Duran* plaintiffs had a strong motive to assert the same interest as appellants, as each group's goal was identical—each wanted its class certified. As noted, the *Duran* plaintiffs had a full opportunity to present their case. The circumstances are such that appellants should reasonably have expected to be bound by the *Duran* decision. As appellants would have enjoyed the fruits of a favorable outcome, fairness dictates that they should be bound by the effect of the decision against them. Ultimately, applying the doctrine of collateral estoppel does not lead to an unfair result, as appellants remain free to litigate the merits of their personal claims.

### 3. *Notice*

Appellants argue that they cannot be bound by the *Duran* decision because a class has not yet been certified. They claim that "until certification has been granted and adequate notice of class certification has been sent, the absent class members are not bound by the rulings in the case." They cite *Home Sav. & Loan Assn. v. Superior Court* (1976) 54 Cal.App.3d 208, 212 [126 Cal.Rptr. 511] (*Home Savings*), in support of their assertion. Their argument misses the mark.

*Home Savings* merely restated the general rule that a class member who does not receive notice of litigation may not be bound by the result. The court did not hold that an absent class member may *never* be bound by a prior ruling or that only rulings pertaining to a certified class can be enforced in subsequent litigation. Moreover, the court did not decide the issue when notice to absent class members was required for purposes of collateral estoppel.

In *Frazier v. City of Richmond* (1986) 184 Cal.App.3d 1491 [228 Cal.Rptr. 376] plaintiffs argued they should not be bound by a ruling in a previous case. They also cited *Home Savings* and claimed they were entitled to notice of the prior proceeding. The *Frazier* court noted the *Home Savings* panel "never addressed *whether* notice was required," and appeared to deem its case to be one where notice is mandatory under the federal rules. (*Id.* at p. 1501.)

■ More importantly, *Home Savings* addressed the issue of notice after a class is certified. We agree with the conclusion of the *Bridgestone/Firestone*

court that notice is a postcertification requirement. We see no statutory mandate or equitable principle that demands that notice of an unsuccessful attempt to certify a class be sent to all putative class members prior to binding a litigant who seeks to certify the same class. As discussed, we conclude that due process is satisfied when an absent class member's interest is adequately represented. (*Johnson v. American Airlines, Inc., supra*, 157 Cal.App.3d at p. 433.)

### 4. *Identity of Issues*

Relying on *Sav-On, supra*, 34 Cal.4th 319, appellants urge they cannot be bound by the *Duran* decision because the law on class certification has changed since that court issued its opinion. Thus, appellants conclude, the *Duran* court did not decide the same issue presented in the instant case. They are incorrect. The *Sav-On* court resolved the question of "whether the trial court abused its discretion in certifying as a class action this suit for recovery of unpaid overtime compensation." (*Id.* at p. 324.) The court evaluated the evidence presented in the trial court and did not change the standards for class certification, citing *Lockheed Martin Corp. v. Superior Court, supra*, 29 Cal.4th 1096, 1106, which had recently reviewed those standards. (*Sav-On*, at p. 326.) The *Lockheed Martin Corp.* case was the law relating to class certification standards when the *Duran* court affirmed the trial court's order denying certification.

Appellants further argue that the *Sav-On* decision eliminated the legal basis for the Court of Appeal's affirmance in *Duran* of the order denying class certification. Appellants contend that because the *Sav-On* decision "clarified the scope of the holding in *Ramirez v. Yosemite Water* [*Co.*] [(1999)] 20 Cal.4th 785 [85 Cal.Rptr.2d 844, 978 P.2d 2] . . . , which was relied upon exclusively by the Court of Appeal in *Duran*," the "continued reliance upon *Ramirez* in overtime class actions is misplaced." Appellants state that because "[u]nder virtually identical facts, the *Sav-On* Court has determined that wage and hour cases such as the instant matter are suitable for class [action] treatment[,] it is not just plausible, it is likely, that Plaintiffs can successfully allege *and* certify a UCL class action."

Appellants, however, have overstated the Court of Appeal's reliance upon *Ramirez* in upholding the denial of class certification in *Duran*. Although the appellate opinion in *Duran* cited to *Ramirez*, it did so only in passing and without any explanation of whether or how the facts of *Duran* were similar to those in *Ramirez*. Moreover, the mere reinstatement of the order granting class certification in *Sav-On* based on the finding that the trial court did not

abuse its discretion does not suggest that the facts of this case would compel the trial court, as a matter of law, to grant class certification.

Finally, appellants contend that the trial court could not rely on the *Duran* decision, as it was an unpublished opinion. The trial court was entitled to take judicial notice of the decision denying class certification as it was "relevant under the doctrines of law of the case, res judicata, or collateral estoppel." (Cal. Rules of Court, rule 977(b)(1).)

Although appellants assert for the first time in their reply brief that public policy demands that the doctrine of collateral estoppel not be applied here, we are not persuaded. Put simply, if appellants are correct, every motion denying class certification could be relitigated until the desired result was reached. The losing class plaintiff could merely insert the name of a different individual to be the potential class representative. When appellants' counsel was asked in oral argument when the string of unsuccessful lawsuits would end, his answer in essence was—when the pursuit is no longer economically feasible.[3] We disagree.

"The class action is a product of the court of equity—codified in section 382 of the Code of Civil Procedure." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 458 [115 Cal.Rptr. 797, 525 P.2d 701].) It is manifestly unfair to subject respondent to a revolving door of endless litigation. In cases, such as this one, where a party had a full opportunity to present his or her claim and adequately represented the interests of a second party who seeks the same relief, principles of equity, " '[p]ublic policy and the interest of litigants alike require that there be an end to litigation.' [Citation.]" (*Citizens, supra*, 60 Cal.App.4th at p. 1065.)

## C. *Effect of* Duran *Writ Petition*

Appellants contend that the matter of issue preclusion was already presented and rejected in the *Duran* case. The assertion is unavailing. The *Duran* court decided the *Gorman* case could not collaterally estop the *Duran* plaintiffs from certifying its class, but it did not determine whether collateral estoppel could apply to future certification efforts. The question we answer today is whether the *Duran* decision, which followed a full hearing on the merits, bars these appellants from seeking class certification.

---

[3] Indeed, in association with other attorneys, counsel is involved in a fourth case seeking to certify the same class in Orange County Superior Court. (*Bracamonte v. The May Department Stores Company* (No. 05CC00129).) The case was filed after the trial court issued its tentative ruling in this matter sustaining respondent's demurrer.

## DISPOSITION

The order is affirmed. Respondent is awarded its costs on appeal.

Epstein, P. J., and Willhite, J., concurred.

A petition for a rehearing was denied November 13, 2006, and appellants' petition for review by the Supreme Court was denied February 7, 2007, S148276. Kennard, J., was of the opinion that the petition should be granted.