Filed 6/27/16  Williams v. U.S. Bancorp Investments CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SCOTT WILLIAMS, Plaintiff and Respondent, v. U.S.BANCORP INVESTMENTS, INC., et al., Defendants and Appellants. | A141199 (City & County of San Francisco Super. Ct. No. CGC10499011) |

U.S. Bancorp Investments, Inc. and U.S. Bancorp (collectively USBI) appeal an order denying their petition to compel arbitration of the individual claims of plaintiff Scott Williams.  USBI contends Williams is barred by collateral estoppel from bringing his claims as a class action and that he is therefore bound by an agreement to arbitrate his individual disputes.  We shall affirm the order.

## I.  BACKGROUND

Two lawsuits are at issue in this dispute.  The first of them, *Burakoff et al. v. U.S. Bancorp* (L.A. Super. Ct., 2008, No. BC341430) (*Burakoff*), was a class action brought by Robert Burakoff and Mohamed Alakozai seeking restitution of overtime wages and wage deductions, waiting time penalties, and meal and rest breaks.  In the *Burakoff* action, the named plaintiffs alleged they worked for USBI as securities brokers and sought to represent a class of securities brokers or broker trainees.

In May 2008, the Los Angeles Superior Court certified a class of "All individuals who are or were employed by Defendant as Investment Financial Consultants in the State

1

of California at any time during the period commencing October 13, 2001 to the date of entry of this Order." The order was entered on May 8, 2008. The court also certified two subclasses. Subclass A consisted of "All class members who worked more than 40 hours in a week or 8 hours in a day but did not receive overtime pay." Subclass B consisted of "All class members who were subject to at least one deduction from commissions or other wages, which deduction was not the result of a dishonest, willful or grossly negligent act by the employee, or who were not reimbursed for expenses or losses incurred by the class member in direct consequence of the discharge of his or her duties."

The *Burakoff* complaint alleged (1) US Bancorp committed acts of unfair competition by not paying overtime pay to members of Subclass A because they were not exempt from overtime pay under the Fair Labor Standards Act (FLSA, 29 U.S.C. § 207(a)(1)) or Wage Order 4-2001 (Cal. Code Regs., tit. 8, § 11040); (2) US Bancorp committed unfair competition by making illegal deductions from the members of Subclass B; (3) both subclasses were owed penalties for US Bancorp's violations of certain Labor Code provisions, including failing to pay all wages due, failure to provide proper wage statements, and failure to maintain records of the daily hours worked by members of subclass A; and (4) members of Subclass A were entitled to additional pay for missed rest and meal breaks.

` The plaintiff in the present action, Williams, became employed by USBI as a financial consultant in May 2007. Williams filed a class action complaint in the present action on April 23, 2010 against USBI in the San Francisco Superior Court, alleging causes of action for unpaid overtime, unpaid meal period premiums, unpaid rest period premiums, unpaid business expenses, wages not timely paid, non-compliant wage statements, and unlawful business practices. As amended, the complaint proposed two subclasses: (1) the "Unpaid Wages Subclass," defined as "All commission paid employees who worked for Defendants in California from May 9, 2008 until the date of certification," and (2) the "Unreimbursed Business Expenses Subclass," defined as "All employees of Defendants who paid for business-related expenses, including expenses for

assistants, client or prospect beverages or meals, or cell phone expenses, in California from May 9, 2008 until the date of certification."

USBI demurred to the first amended complaint on the ground Williams was part of the certified class in the *Burakoff* action, which was pending in the Los Angeles Superior Court. USBI asked the court either to dismiss the action without prejudice or issue an order staying the *Williams* action until the *Burakoff* action was concluded. On September 30, 2010, the trial court found the current action "is founded upon the same primary rights, states substantially the same causes of action, and involves substantially the same parties" as in the *Burakoff* action. The court therefore stayed the present action until the conclusion of the proceedings in *Burakoff*. During the pendency of the stay, the parties in the current case filed a number of case management conference statements and a notice of related case.

After the parties to the *Burakoff* action engaged in extensive discovery, USBI moved to decertify the class. In May 2011, the Los Angeles Superior Court granted the motion to decertify as to Subclass A (financial consultants who did not receive overtime pay) on the ground members of the subclass lacked sufficient commonality. The court denied the motion as to Subclass B (financial consultants who were subject to deductions from commissions or were not reimbursed for expenses). The parties to the *Burakoff* action reached a settlement as to the claims of Subclass B in September 2012.[1] Williams acknowledged that, due to his participation in the settlement, his fourth cause of action in the present case, for unpaid business expenses, should be dismissed.

The stay in the present action was lifted in July 2013, after the *Burakoff* action was complete.

USBI then demanded arbitration of Williams's individual claims. It based its demand on a "Form U4" that Williams had signed at the outset of his employment with USBI, which included an agreement "to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required

[1] In a case management conference statement filed in October 2012, USBI indicated it intended to bring a motion to compel arbitration.

3

to be arbitrated under the rules of the self-regulatory organizations with which you are registering." When Williams did not agree to arbitrate his individual claims, USBI brought a motion to compel arbitration and to dismiss the first amended complaint, based on Williams's Form U4 and a rule of the Financial Industry Regulatory Authority's Code of Arbitration Procedure for Industry Disputes (FINRA rules), rules 1300 et seq., requiring a dispute to be arbitrated if it "arises out of the business activities of a member or an associated person and is between or among: [¶] Members; [¶] Members and Associated Persons; or [¶] Associated Persons." (FINRA rule 13200.)[2]

The parties disputed the effect of FINRA rule 13204, which forbids arbitration of class actions, and further provides: "A member or associated person *may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until*: [¶] The class certification is denied; [¶] *The class is decertified*; [¶] The member of the certified or putative class is excluded from the class by the court; or [¶] The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any." (Former FINRA rule 13204(d) [now FINRA rule 13204(a)(4)], italics added.)[3] USBI contended the *Burakoff* decertification order collaterally estopped Williams from relitigating the appropriateness of class certification because he was a member of the *Burakoff* class, and because *Burakoff* raised substantially the same claims and identical class certification issues.[4] As

_____

[2] There is no dispute that FINRA's rules are the "rules of the self-regulatory organization[]" with which Williams registered and that they apply to this dispute.

[3] The parties refer to the rule in question as rule 13204(d), and we shall do the same.

[4] USBI also demurred to the first amended complaint on the grounds the Los Angeles County Superior Court had already ruled in the *Burakoff* action that the issues could not proceed as a class action, and that the cause of action for unpaid expenses was barred by the settlement as to Subclass B in the *Burakoff* action. The trial court sustained the demurrer as to the cause of action for unpaid business expenses and overruled it as to all other causes of action.

4

a result, according to USBI, FINRA rule 13024(d) did not prevent arbitration of Williams's individual claims. Williams argued that his dispute was not subject to arbitration because there had not yet been any determination on class certification in the present action, and that principles of collateral estoppel did not bar him from litigating the appropriateness of such certification.

The trial court denied USBI's motion to compel arbitration and to dismiss the class complaint. It ruled: "FINRA Rule 13204(d) prohibits the enforcement of an arbitration agreement with respect to any claim that is the subject of a putative class action until there is a determination of class certification made. Collateral estoppel does not apply here, as the first prong of the test requiring that the issues be identical is not established. [Citation.] The *Burakoff* class was comprised of 'all individuals who are or were employed as Investment Financial Consultants in the State of California at any time during the period commencing October 13, 2001 to [May 8, 2008].' [Citation.] The putative class in this case is comprised of 'all commission paid employees who worked for Defendants in California from May 9, 2008 until the date of certification.' [Citation.] The issue of whether the class in this case can be certified is not identical to the issue of decertification of the *Burakoff* class because the two classes are comprised of different class members during different time periods. . . . [C]ollateral estoppel applies where a party seeks to certify an identical class. Because the class here is not identical, collateral estoppel does not apply. Therefore, no determination of class certification has been made at this point in the proceedings." USBI has appealed from this order.

## II. DISCUSSION

USBI contends the trial court erred in denying its motion to compel arbitration. According to USBI, the issue of the propriety of class certification had already been resolved in the *Burakoff* action, to which Williams was a party, and Williams is barred by principles of collateral estoppel from relitigating the issue. Accordingly, USBI contends, FINRA rule 13204(d) does not prevent the enforcement of the parties' arbitration agreement.

5

### A. Legal Standards

#### 1. *Motion to Compel Arbitration*

"In reviewing an order denying a motion to compel arbitration, we review the trial court's factual determinations under the substantial evidence standard, and we review issues of law de novo. [Citation.]" (*Duick v. Toyota Motor Sales, U.S.A., Inc.* (2011) 198 Cal.App.4th 1316, 1320.) Where the facts are undisputed, the standard of review is de novo. (*Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1468.) Upon uncontested facts, a trial court's application of the doctrine of collateral estoppel is also reviewed de novo. (*Roos v. Red* (2005) 130 Cal.App.4th 870, 878; *Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507 (*Johnson*).) We review the decision of the trial court rather than its reasoning, and " '[i]f correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion.' " (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216.)

#### 2. *Collateral Estoppel*

The doctrine of collateral estoppel bars relitigation of issues already argued and decided in a prior proceeding. (*Johnson*, *supra*, 166 Cal.App.4th at p. 1507.) Five requirements must be satisfied: " 'First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' [Citations.]" (*Id*. at pp. 1507–1508.) Even if all these requirements are met, the court may look to the public policies underlying the doctrine before applying collateral estoppel in a particular setting; thus, the court balances the rights of the party to be estopped against the policies of minimizing repetitive litigation, preventing inconsistent judgments, and protecting against vexatious litigation. (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 943–944 (*Pacific Lumber*); *Alvarez v. May Dept. Stores Co.*

6

(2006) 143 Cal.App.4th 1223, 1233 (*Alvarez*); *Jackson v. City of Sacramento* (1981) 117 Cal.App.3d 596, 603 (*Jackson*) ["Collateral estoppel is not an inflexible, universally applicable principle; policy considerations may limit its use where the limitation on litigation underpinnings of the doctrine are outweighed by other factors"].) The first requirement—that the issues in the first and second proceeding be identical—means that "where the previous decision rests on a 'different factual and legal foundation' than the issue sought to be adjudicated in the case at bar, collateral estoppel effect should be denied. [Citation.]" (*Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1517.) The party asserting collateral estoppel has the burden of proving each of the requirements have been met. (*Jackson*, 117 Cal.App.3d at p. 602; *Johnson*, *supra*, 166 Cal.App.4th at p. 1508.)[5]

### 3. *Elements of Class Certification*

The requirements for class certification are also germane to the issue before us. " 'Class certification requires proof (1) of a sufficiently numerous, ascertainable class, (2) of a well-defined community of interest, and (3) that certification will provide substantial benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods. [Citations.] In turn, "the community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." [Citation.]' [Citation.]" (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1041 (*Bridgeford*).)

---

[5] Moreover, " '[a] former judgment is not a collateral estoppel on *issues which might have been raised but were not*; just as clearly, it is a collateral estoppel on issues which were raised, *even though some factual matters or legal arguments which could have been presented were not*.' [Citation.]" (*Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 181; and see *Johnson*, *supra*, 166 Cal.App.4th at p. 1517 ["That application of collateral estoppel does not depend on the legal theory advanced in the successive lawsuits is well established"].) We are not persuaded by Williams's argument that the minor differences in the legal theories asserted in the present action and the *Burakoff* action suffice to prohibit the application of collateral estoppel.

**B. Analysis**

USBI argues that under *Alvarez*, collateral estoppel is properly applied to the issue of class certification. *Alvarez*, decided in 2006, was a putative class action by area sales managers for the defendant department store, which had already faced two prior class actions asserting failure to pay overtime compensation. Class certification had been denied in both prior cases. (*Alvarez*, *supra*, 143 Cal.App.4th at pp. 1227–1229.) The plaintiff in *Alvarez*, who was not a named plaintiff in the earlier cases, filed a class action asserting the defendant had improperly classified area sales managers as exempt in order to avoid payment of overtime wages and other benefits. (*Id*. at p. 1229.) The trial court sustained a demurrer as to the class allegations, and the appellate court affirmed, ruling that general principles of collateral estoppel applied when a prevailing party sought to enforce a ruling denying class certification against an absent putative class member. (*Id*. at pp. 1230, 1236.) According to the appellate court, the plaintiffs in one of the earlier actions were the " 'virtual representatives' " of the *Alvarez* plaintiffs because (1) the only difference between the parties was the name of the representative plaintiff, (2) the earlier plaintiffs had a strong motive to assert the same interest as the *Alvarez* plaintiff, and (3) the plaintiffs had a full opportunity to present their case. (*Id*. at p. 1238.) Both complaints alleged the same general misconduct, which took place during approximately the same time period, and they sought certification of the same class of employees. (*Id*. at p. 1237.) The court concluded that due process was satisfied when an absent class member's interest was adequately represented, and applied the doctrine of collateral estoppel to bar relitigation of the question of class certification. (*Id*. at p. 1239; and see *Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193 (*Bufil*).)

The rule of *Alvarez*, however, has since been called into question. While California courts have held or assumed that the "denial of class certification can establish collateral estoppel against absent putative class members on issues that were actually decided in connection with the denial," federal courts have been divided as to whether denial of class certification can establish collateral estoppel. (*Bridgeford*, *supra*, 202 Cal.App.4th at p. 1043, citing *In re Baycol Products Litigation* (8th Cir. 2010)

8

593 F.3d 716, 723, revd. *sub nom. Smith v. Bayer Corp.* (2011) 564 U.S. 299 [the denial of class certification binding on unnamed putative class members], *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation* (7th Cir. 2003) 333 F.3d 763, 768–769 [unnamed putative class members treated as parties for purposes of collateral estoppel], and *In re Ford Motor Co.* (11th Cir. 2006) 471 F.3d 1233, 1253–1254 & fn. 40 [denial of class certification normally insufficiently final to establish collateral estoppel].)

In 2011, the United States Supreme Court weighed in on the issue. In *Smith v. Bayer Corp.* (2011) 564 U.S. 299 [131 S.Ct. 2368] (*Smith*), as the *Bridgeford* court explained, "the high court held that unnamed putative class members cannot be bound by issue preclusion if the class was never certified in the prior proceeding. ([*Smith*, *supra*,] at pp. ___–___ [131 S.Ct. at pp. 2380–2381].) . . . The high court explained that unnamed putative class members as nonparties can be bound by issue preclusion only if there was a properly certified class because only in those circumstances can the court in the later proceeding conclude that their interests were adequately represented in the prior proceeding. (*Id.* at pp. ___-___ and fn. 11 [131 S.Ct. at pp. 2379–2381 & fn. 11].)" (*Bridgeford*, *supra*, 202 Cal.App.4th at pp. 1043–1044.)

The *Bridgeford* court found the reasoning in *Smith* "persuasive and conclude[d], under California law, that the denial of class certification cannot establish collateral estoppel against unnamed putative class members on any issue because unnamed putative class members were neither parties to the prior proceeding nor represented by a party to the prior proceeding so as to be considered in privity with such a party for purposes of collateral estoppel." (*Id.* at p. 1044; see also *Taylor v. Sturgell* (2008) 553 U.S. 880, 898, 900–901 (*Taylor*) [rejecting a "broad theory of virtual representation" and concluding in class action context that limitations on a party's representation of a nonparty for

9

preclusion purposes are implemented by procedural safeguards of Federal Rule of Civil Procedure 23].)[6]

It is not clear, however, that the rule of *Bridgeford* applies where, as here, a class is first certified and then *decertified*, that is, where for at least a portion of the earlier litigation, the absent class members were parties and were represented by the named plaintiffs and their counsel. In *Burakoff*, the class remained certified for three years, and the decertification motion was granted only after the parties had developed the evidence regarding the propriety of class certification through extensive discovery. The parties have not drawn our attention to any case raising this issue, and our own research has disclosed none.[7]

We need not decide this question because, whatever its resolution, we are not persuaded that the trial court erred in declining to apply collateral estoppel to deny the petition to compel arbitration. The party asserting collateral estoppel has the burden to show its requirements are met. (*Pacific Lumber*, *supra*, 37 Cal.4th at p. 943; *Jackson*, *supra*, 117 Cal.App.3d at p. 602; *First N.B.S. Corp. v. Gabrielsen* (1986) 179 Cal.App.3d

---

[6] *Smith* was decided under the federal Anti-Injunction Act (28 U.S.C. § 2283) which permits a federal court to enjoin a state court proceedings only " 'as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment.' " (*Smith*, *supra*, 564 U.S. ___, 131 S.Ct. at p. 2375.) The high court noted that under that act, a federal court should issue an injunction "only when a former federal adjudication clearly precludes a state court decision." (*Id*. at p. 2382.) However, the court concluded, "this case does not even strike us as close. The issues in the federal and state lawsuits differed because the relevant legal standards [regarding class certification] differed. And the mere proposal of a class in the federal action could not bind persons who were not parties there." (*Ibid*.)

[7] *Smith* contains language that suggests its holding is limited to classes that were never certified. For instance, the court emphasized that in the prior case at issue, "we cannot say that a properly conducted class action existed *at any time* in the litigation. . . . Neither a proposed class action nor a rejected class action may bind nonparties. What does have this effect is a class action approved under [Federal Rule of Civil Procedure] 23. But [the prior] lawsuit was *never* that." (*Smith*, *supra*, 564 U.S. at p. 315, italics added.) *Johnson*, on the other hand, suggests that a " 'properly conducted' " class action that may bind nonparties means one that has been certified and then litigated to judgment or settled. (*Johnson*, *supra*, 166 Cal.App.4th at pp. 1511–1512, fn. 8.)

10

1189, 1194.)  Normally, in order to make this determination, a court looks not simply to the underlying findings and judgment, but " 'carefully scrutinize[s]' the pleadings and proof." (*Schaefer/Karpf Productions v. CNA Ins. Companies* (1998) 64 Cal.App.4th 1306, 1314.)  However, where the prior judgment "*unambiguously* covers the new action," the court in the later action need not examine the earlier record.  (*Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 399 (*Aerojet-General*); accord *Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 618.)

As the trial court noted in concluding the two classes were not identical, the *Burakoff* class was comprised of "all individuals who are or were employed as Investment Financial Consultants in the State of California at any time during the period commencing October 13, 2001 to [May 8, 2008]," and the putative subclass in the present action is comprised of "all commission paid employees who worked for Defendants in California from May 9, 2008 until the date of certification."  USBI points out that Williams was a member of the putative class of investment financial consultants in *Burakoff*, and investment financial consultants are members of the proposed class of commission paid employees.[8]  That is, according to USBI, the *Burakoff* subclass A (investment financial consultants) was a subset of the type of employees comprising the proposed class in the present action (all commission paid employees).  Because the current proposed class is broader than that rejected in *Burakoff*, USBI argues, the *Burakoff* court's conclusion that members of Subclass A in that case lacked sufficient commonality necessarily means that the members of a broader class in the present case likewise lacked the requisite commonality for purposes of litigating similar claims, and the finding of insufficient commonality binds Williams now.  Moreover, USBI argues, the different dates for the proposed classes are immaterial because plaintiff has not alleged that the circumstances or working conditions changed between the two class

_____

[8] In the first amended complaint in this action, Williams alleged he had been employed "as a 'Financial Advisor' and 'Investment Financial Consultant,' which are commission paid positions."

11

periods. (Cf. *Bufil*, *supra*, 162 Cal.App.4th at pp. 1203–1204 [classes in two cases not the same where the second class was a distinct subclass of the first].)

In making this argument, USBI ignores the fact that it, not plaintiff, bears the burden of proof on the issue of collateral estoppel. (*Johnson*, *supra*, 166 Cal.App.4th at p. 1508; *Pacific Lumber*, *supra*, 37 Cal.4th at p. 943.) The motion before us is not one for class certification, but to compel arbitration and dismiss the complaint. At this point, plaintiff has not yet moved for class certification and has not developed a record to support such a motion. USBI has not pointed to any evidence supporting its contention that the differences between the *Burakoff* class and the class proposed here are immaterial, or that there was no difference in the duties of the class members as between the two class periods. (See *Conservatorship of Buchenau* (2011) 196 Cal.App.4th 1031, 1040–1041 [appellants failed to include in record evidence necessary to determine whether two proceedings involved identical factual allegations]; *Union Pacific Railroad Co. v. Santa Fe Pacific Pipelines, Inc.* (2014) 231 Cal.App.4th 134, 179 ["Collateral estoppel does not bar a later claim if new facts of changed circumstances have occurred since the prior decision"].) USBI asserted in a brief in support of its demurrer below that the depositions and declarations upon which the *Burakoff* decertification order was based show that between 2004 and 2011, the class members' responsibilities remained the same. But it does not point to the underlying evidence, and our review of the decertification order itself shows that it was based on the class members' duties during the *Burakoff* class period. This evidentiary record is insufficient to support the assertion that class members' duties remained the same throughout the two class periods. (Compare *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 231 & fn. 11 [evidence presented in trial court showed holiday staffing and compensation practices at issue had been consistent between time of earlier decision and case at issue]; *Alvarez*, *supra*, 143 Cal.App.4th at pp. 1229–1230, 1232, 1237 [overlap of several months between time periods at issue; court concluded

12

complaint's alleged misconduct took place during approximately same time period].) It is possible that USBI will be able to make such a showing, but it has not done so yet.[9]

We recognize that where the prior judgment unambiguously shows that the issues in the prior proceeding were identical to those in the current proceeding, the court may apply collateral estoppel without examining the record. (*Aerojet-General*, *supra*, 97 Cal.App.4th at p. 399.) While the classes here and in *Burakoff* might ultimately be found to be indistinguishable, this record does not compel that conclusion as a matter of law. In the circumstances of this case, the trial court did not err in denying USBI's motion to compel arbitration and dismiss the class complaint.[10]

### III. DISPOSITION

The order appealed from is affirmed.

---

[9] At oral argument, the question arose as to whether, had USBI litigated the issue of collateral estoppel more fully and with an evidentiary record, it would have then become vulnerable to a claim that it had waived the right to arbitrate. Williams's counsel conceded that, having argued USBI was required to provide evidence that all elements of collateral estoppel were satisfied, Williams could not turn around and argue that in doing so USBI would be waiving its right to arbitration. Williams's counsel did not concede any other grounds that might be advanced to support a waiver claim.

[10] We need not consider Williams's additional argument that USBI waived its right to compel arbitration.

13

_____

Rivera, J.

We concur:

_____

Reardon, Acting P.J.

_____

Streeter, J.