[No. 19531.   Department Two.—August 27, 1895.]

# WITMER BROTHERS COMPANY, RESPONDENT, v. IVAR A. WEID, APPELLANT.

CONTRACTS—SUBSCRIPTION TO STREET RAILROAD—ESCROW—RESCISSION—NOTICE.—Where notes were made to secure the payment of a subscription in aid of a proposed street railroad, in consideration of the construction thereof on a specified route passing through the land of the maker of the notes, and the notes were deposited in escrow with a third party, to be delivered, upon performance of the conditions specified in the contract, to the person constructing the road, a mere notice to the person holding the notes in escrow that the maker had rescinded the subscription contract on the ground that the terms thereof had not been complied with, without any notice of such rescission or of his intention to rescind to the person agreeing to construct the railroad, cannot operate as a rescission thereof.

ID.—DELIVERY OF NOTES—CONSTRUCTION OF CONTRACT—TIME, WHEN NOT OF ESSENCE.—Where the conditions of the subscription in aid of the street railroad were that one-half thereof, represented by two months' notes, was to be paid when the grading was done and the iron was on the ground, and the balance, represented by four months' notes, was to be paid on the completion of the road on the first day of its operation, and the conditions upon which the notes were placed in escrow were similar, all conditions precedent, not expressly enumerated, are excluded, and an agreement in the contract that the road should be extended to a specified point " within four months, weather permitting," not being expressly made a condition precedent, nor declared to be of the essence of the contract, is not to be construed as making the time therein specified of the essence of the contract.

ID.—DELIVERY OF NOTES—ORDER OF AGENT—WAIVER OF CONDITION.—
An agent having a power of attorney sufficient to authorize him to order
the notes to be delivered may waive any condition as to the construc-
tion of the road within the time mentioned in the contract, by a written
order that the notes in escrow should be delivered to the constructor of
the railroad at the time of its completion, where there is no averment
or proof of mistake of the agent or principal, or of any fraud in the
transaction.

ID.—FAILURE OF CONSIDERATION—TIME FOR COMPLETION OF ROAD—SET-
TLEMENT OF SUBSCRIPTION.—Where the notes were delivered upon the
completion of the road, and the time of its completion was not made of
the essence of the contract, the delivery of the notes precludes any plea of
failure or partial failure of the consideration expressed in the contract in
reference to advantages to be derived from the extension and operation
of the road; and, in the absence of fraud or mistake, the delivery of the
notes upon the completion of the road is a conclusive settlement of all
obligations of both parties arising from the subscription contract, and a
delay of three and a half months in completing the road at the time of
the settlement must be considered as of no injurious consequence, or as
excusable.

ID.—DECLINE IN MARKET VALUE OF LAND—RECOUPMENT—INSUFFICIENT
PLEADING—EXCLUSION OF EVIDENCE.—An answer, in an action upon
the notes, averring that there was a decline in the market value of the
land between the written date of the contract and the completion of the
road, but not averring that such decline occurred during the period
within which the road was to have been constructed by the terms of the
contract, nor that the delay in constructing the road caused any decline
in the market price of the land, nor that the defendant would have sold
his land at any price even if the road had been completed within the
contract period, is insufficient to sustain any recoupment of damages on
account of delay, and the court may properly exclude proof of its aver-
ments.

APPEAL from a judgment of the Superior Court of
Los Angeles County and from an order denying a new
trial. WALDO M. YORK, Judge.

The facts are stated in the opinion.

*H. G. Weyse,* for Appellant.

The instrument creating the authority of an agent
must govern in interpreting the scope of the agent's
authority, and those dealing with an agent must look
to the instrument creating the authority to ascertain
whether his authority is adequate or not, and must keep
strictly within the limits fixed to the agent's authority,
or the principal will not be bound. (Mecham on Agency,

pp. 274, 303, par. 393.)   As the notes were delivered in violation of the terms of the contract, they never became fully executed.   (*McLaughlin* v. *Clausen,* 85 Cal. 322.) Whether or not time is of the essence of the contract depends upon the intention of the parties.   (Pomeroy on Specific Performance, sec. 384; *Green* v. *Covillaud,* 10 Cal. 328; 70 Am. Dec. 725.)   If time is essential, then the act to be done must be done on or before the date specified for the performance, or all rights are lost. (Pomeroy on Specific Performance of Contracts, par. 373.)   The court erred in refusing to allow defendant to prove loss and damage by introducing evidence to show that the value of the land at the time the contract was entered into, and at the time when the same was to have been completed, was far greater than when it was actually completed.   (Sedgwick on Damages, 7th ed., 119.)

*P. W. Dooner,* for Respondent.

As the notes were to be delivered when the certificate of the contracting engineer was given that certain acts had been performed, without specifying any time, time was not of the essence of the contract.   (Addison on Contracts, sec. 522; Pomeroy on Contracts, 376.)   The principal cannot disavow nor the agent qualify the lawful acts of the agent.   (Civ. Code, secs. 2304, 2307, 2315, 2318, 2319, 2332, 2342; Story on Agency, secs. 126, 133; *McNeil* v. *Shirley,* 33 Cal. 203; *Jones* v. *Marks,* 47 Cal. 242; *De Rutte* v. *Muldrow,* 16 Cal. 505.)

Vanclief, C.—Action on two promissory notes made by defendant to James McLoughlin, each for five hundred dollars, with interest after maturity at rate of one per cent per month, and assigned by McLoughlin to plaintiff.

The judgment was in favor of plaintiff for the full amount of principal and interest of both notes.   Defendant appeals from the judgment, and from an order denying his motion for a new trial.

The notes were made to secure payment of defendant's subscription of one thousand dollars, to be paid to McLoughlin in consideration of the construction of a proposed street railroad on a specified route passing through defendant's land.   The following is a copy of the subscription contract:

"This agreement, entered into this 27th day of December, 1887, by and between H. H. Wilcox, Frederick J. Moll, Henry Claussen, Mrs. H. Lee Noble, Manuel Andrada, Martin Labaig, Laurent Etchopero, Levi H. Dunham, Nicholas Cochems, N. L. Shaffer, M. Sanders, T. B. Rapp, Claudio Lopez, Wm. H. Avery, I. W. Lord, W. D. Wilson, Linwood Salter, S. C. Sloan, Ivar A. Weid, H. M. Russell, parties of the first part, and James McLoughlin, party of the second part, witnesseth:

"That whereas it is desirable that the steam dummy railroad, now running from the terminus of the Second street railroad, at the corner of Diamond street and Belmont avenue, westerly by various streets and ways to the southwest corner of section 12, T. 1 S., R. 14 W., S. B. M., be extended north three-fourths of a mile and west one and one-fourth miles to the west line of east half of N. E. $\frac{1}{4}$ of section 10, T. 1 S., R. 14 W., S. B. M., the parties of the first part, in consideration of the advantages to be derived by them from the extension and operation of said railroad, agree to pay to James McLoughlin, party of the second part, the several sums set opposite our names, on the following terms and conditions, to wit:

"Ivar A. Weid......................$1,000."
(The names and sums of the other nineteen are here omitted.)

" That the said amounts subscribed shall be payable as follows: One-half represented by two months' notes when grading is done and the iron is on the ground; the balance represented by four months' notes on the completion of the said road on the first day of its operation.

"That the dummy railroad shall be extended from its present terminus to the west line of east ½ of N. E. ¼ of section 10, T. 1 S., R. 14 W., S. B. M., by the route above designated within four months, weather permitting.

"That the said dummy railroad shall be well and substantially built, and shall be operated by steam power, and shall have a speed and carrying capacity equal to all requirements of the section; that the fare upon this road shall not exceed fifteen cents for residents along the line of the road as a commutation rate, provided always that the right of way be secured to James McLoughlin, on demand of James McLoughlin, for said extension absolutely, and for further extension of his road by the first parties, and each of them, over and by any route that the said McLoughlin shall adopt for the construction thereof, to the westerly line of Wilcox's land, or the northerly line of Weid's land.

"That the said amounts shall be evidenced by the promissory notes of the above subscribers executed to the said James McLoughlin, each subscriber executing two such notes, each reading one-half the amount of his subscription; the one payable two months after date thereof and the other four after date thereof, and each bearing interest at the rate of one per cent per month after maturity.

"That said notes when so executed shall be deposited with Geo. H. Bonebrake, at the Los Angeles National Bank, to be held in trust until the conditions in this contract specified shall be performed by the said McLoughlin, and the certificate of Geo. E. Pillsbury, constructing engineer of said road, that said conditions have been performed shall be served upon said trustee, and upon the delivery to him of said certificate—viz: 1st. That the grading is done and the rails on the ground; and 2nd. That the road is completed and in running order—he shall deliver to said James McLoughlin the two months' notes and the four months' notes, respectively, at the times of such respective presentations.

"In consideration of the foregoing agreement of the parties of the first part, and the guaranty of I. A. Weid, O. G. Weyse, and H. H. Wilcox, hereinafter contained, said McLoughlin promises and agrees to build and equip said railroad as hereinafter specified.

"And said subscribers, H. H. Wilcox, O. G. Weyse, and Ivar A. Weid, in consideration of the promises aforesaid, do hereby guarantee to pay to said McLoughlin when said railroad shall be completed, evidenced as aforesaid, the further sum of $1,200.00, thereby making a total subscription of $10,000.00, and said guaranty to be apportioned as follows:

"H. H. Wilcox............................. $600
"O. G. Weyse & I. A. Weid, jointly and severally...   600

"The said H. H. Wilcox further agrees to and hereby guarantees the subscriptions and obligations of Ivar A. Weid aforesaid.

[SIGNED]    "JAMES MCLOUGHLIN,<br>
"H. H. WILCOX,<br>
"N. COCHEMS,<br>
"IVAR A. WEID."

The findings of fact bearing on the points made by appellant are as follows:

"That the promissory notes in suit were both deposited in escrow with George H. Bonebrake, by the defendant Ivar A. Weid, on the 24th day of January, 1888, with only the written instructions by the defendant to said Bonebrake, of said date, as follows, viz: 'The above notes, due in two months from date of same, to be delivered to said James McLoughlin upon the certificate of Geo. E. Pillsbury that the grading for the West End Dummy R. R. is finished to Wilcox avenue in Hollywood, and that the iron for the same is on the ground; and the four months' note to be delivered to said McLoughlin upon the certificate of said Pillsbury that the road is finished and cars running to Wilcox avenue in Hollywood.'

"II.   That on the 7th day of May, 1888, the defend-

ant notified said Bonebrake not to deliver the said notes, or either of them, to said McLoughlin, and thereafter, on or about the 10th day of May, 1888, said defendant departed from the state of California, and visited the continent of Europe, and remained absent from the state of California continuously until about the first day of April, 1891.

" III.   That on the 7th day of June, 1888, the said McLoughlin had finished the grading of the roadway for the said dummy railroad, and had the necessary iron and rails deposited on the ground, and thereupon, on said day, procured the certificate of George E. Pillsbury, the said civil-engineer, to all the said facts, and presented the same to said Bonebrake, and thereupon, on said day, demanded of him the delivery of the said two months' note in suit, but the said Bonebrake failed and refused to deliver the same at said time, by reason of the notification not to do so as aforesaid.

" That thereafter, on the 14th day of August, 1888, the said James McLoughlin had completed said railroad and put the same into operation, and had cars running thereon throughout, and on the said day procured the certificate of said George E. Pillsbury, engineer, to all the said facts, and on said day presented said certificate to said George H. Bonebrake, and demanded of him the delivery of said four months' note in suit, but the said Bonebrake failed and refused to deliver the said note at said time, by reason of the notification by him received from said defendant not to do so, as aforesaid.

" IV.   That on the 8th day of November, 1888, the defendant, Ivar A. Weid, acting by and through John Milner, his attorney in fact, thereunto fully authorized by a valid existing general power of attorney, theretofore duly executed by Ivar A. Weid, the defendant, and duly recorded—which power duly authorized his said attorney, as the act and deed of him, the said Ivar A. Weid, ' to sign, seal, execute, deliver, and acknowledge such deeds, leases, and assignments of leases, covenants, indentures, agreements, mortgages, hypothecations, bot-

tomries, charter parties, bills of lading, bills, bonds, notes, receipts, evidences of debt'—'and such other instruments in writing, of whatsoever kind and nature, as may be necessary or proper in the premises' . . . . ' thereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue of these presents'—instructed said Bonebrake, trustee, in writing, to deliver the notes in suit to said McLoughlin, and on the day next succeeding, to wit, the 9th day of November, 1888, in obedience to said instruction, the said Bonebrake did accordingly deliver the said notes to the said James McLoughlin."

It will be observed that the road was not completed within four months after the date of the contract, as provided therein, nor until the 8th of August, 1888. As to the cause of this delay, the court found: 1. That the contract was not fully executed by all the parties of the first part until January 24, 1888, when the notes were deposited with Bonebrake; 2. That the parties of the first part failed to procure the right of way for said road as provided in the contract; and 3. That the chief cause of the delay was that the rails and other materials for the road, while being transported by railroad, were delayed by a washout of the track. That these delays were unavoidable and without fault upon the part of McLoughlin; and, furthermore, that the defendant suffered no injury or damage by reason of the delay.

1. Appellant contends that defendant's notes were never properly delivered, because defendant, on May 7, 1888, two days before his departure for Europe, notified Bonebrake that he had rescinded the subscription contract, on the ground that the terms thereof had not been complied with by McLoughlin.

Conceding that the notes should be read and construed in the light of the subscription contract, which, by the way, had not been deposited with, or seen by, Bonebrake, it will hardly be contended that defendant could have rescinded that contract by mere notice to Bonebrake that he *had* rescinded it, without any notice

of such rescission, or of his intention to rescind, to Mc-. Loughlin. It is not pretended that defendant ever notified McLoughlin of his intention to rescind, or of any objection to the delay of the work, until after the road had been completed, and after both notes had been delivered by Bonebrake pursuant to the written order of defendant's agent, Milner. Nor does it appear that McLoughlin had any knowledge of defendant's notice to Bonebrake that he had rescinded the contract until June 7, 1888, when the work had been so far advanced as to entitle McLoughlin to delivery of the two months' note, and even then only by inference from the facts that Bonebrake then refused to deliver the two months' note, and *probably* then informed plaintiff of his reason for the refusal; for there is no express testimony that Bonebrake ever informed McLoughlin of defendant's notice of rescission. Nor did the defendant pretend that his notice to Bonebrake effected a rescission, or was more than mere notice to Bonebrake of a rescission already effected, as it purported to be. When and by what means had the alleged rescission been effected? To this inquiry there is no response in the record.

Another alleged reason why the notes were not properly delivered is that the time within which the road was to be completed is of the essence of the contract, and, therefore, that the completion of the road *within that time* was a condition precedent to the right of McLoughlin to a delivery to him of the notes. But nothing of this is expressed in the contract, nor do I think it is implied. The only conditions upon which payment of the subscriptions were to be made were: " One-half, represented by two months' notes, when the grading is done and the iron is on the ground; the balance, represented by four months' notes, on the completion of the road on the first day of its operation." It was surely and necessarily intended that the two months' notes were to be delivered before the road was completed. Then again the written instructions to Bonebrake as to the conditions upon which he should deliver the notes agreed

upon by the parties, and deposited with the notes, correspond with the conditions named in the contract, as follows: "The above notes [list of all the notes] due in two months from date of same, to be delivered to James McLoughlin upon the certificate of Geo. E. Pillsbury that the grading for the road is finished to Wilcox avenue in Hollywood, and that the iron for same is on the ground, and the four months' notes to be delivered to said McLoughlin upon certificate of said Pillsbury that the road is finished, and cars running to Wilcox avenue in Hollywood." (Fol. 61.) The subscription contract was not deposited with Bonebrake, nor did he know its contents until after delivery of all the notes in strict obedience to the above instructions, and to the following written order indorsed on said instructions:

"L. A., CAL., Nov. 8, 1888.

" *Geo. H. Bonebrake:* Deliver to Jas. McLoughlin the two notes given by Ivar Weid for $500 each.

"IVAR A. WEID.

"By John Milner,

" *His attorney in fact.*"

These conditions precedent, expressly enumerated as such in the contract and in the instructions to Bonebrake, exclude all others which are not expressly made such; and, since the provision in the subscription contract that the road " shall be extended from *its* present terminus to the west line of east half of northeast quarter of section 10 . . . . by the route above designated, within four months, weather permitting," is not expressly made a condition precedent, nor declared to be of the essence of the contract, it should not be so construed. The case of *McLaughlin* v. *Clausen*, 85 Cal. 322, cited by appellant, is not in point; for, though that action was upon one of the notes made pursuant to the subscription contract in question here, this court said: "It does not present the mere question whether the stipulation that the road should be completed and running within a certain time was of the essence of the

contract"; and this question was not considered in that case, though it was there held that "the completion of the road was, by the terms of the contract, made an absolute condition precedent, and, until such completion, the note could not be delivered or take effect." In that case the question thus decided arose upon a general demurrer to the answer, in which it was alleged that the road was not completed when the note was delivered.

But even if it be conceded in this case that time was essential, and that completion of the road within the time mentioned was a condition precedent to the delivery of the notes, yet the defendant was at liberty to waive the condition, and I think he did waive it by his written order on Bonebrake to deliver the notes given by his duly authorized agent, Milner, as found by the court. No doubt that Milner was authorized to order the notes to be delivered, and that the construction of his written power of attorney from defendant by the court was correct in this respect. The only matter urged against the legitimate effect of this order by Milner is his testimony that at the time he gave the order he "was not aware of the fact that Mr. Weid had given written instructions to Major Bonebrake not to deliver those notes. When Mr. Weid left for Europe he gave no special instructions in regard to those notes, but did give me special instructions in regard to the managing of his ranch, and so on. He mentioned, in a general way, that he had given some notes to Mr. McLoughlin in connection with the building of this road, without any further instructions about them." This shows no material mistake of either the agent or principal. The agent did not exceed his authority, and did only what his principal was plainly obligated to do by his contract; besides, under the pleadings, the testimony of Milner was wholly immaterial and irrelevant. The answer simply denies that the notes were ever delivered by defendant to plaintiff, and alleges that they were delivered by Bonebrake before the road was com-

pleted, "in contravention of the terms of said contract." There is, in the answer, no averment of mistake or fraud.

2. The only other point made by appellant is that there was a failure or partial failure of consideration for the notes; and counsel for appellant says the question of failure of consideration "resolves itself into this: Was the stipulation in the contract as to time a material one?" We have seen that the time mentioned in the contract within which the road was to be completed was not a condition precedent to the delivery of the notes, and that the notes were voluntarily and properly delivered after the road was completed. Under these circumstances, I think the delivery of the notes precluded a plea of failure, or partial failure, of the consideration expressed in the contract, to wit: "The advantages to be derived by them (parties of the first part) from the extension and operation of said railroad." As it is admitted that the road was completed on August 8, 1888, the only possible failure of the consideration was the failure to operate the road from April 27th until August 8, 1888; and such failure occurred and must have been known to all parties interested before the notes were delivered. In the absence of fraud and mistake the delivery of the notes completed a conclusive settlement of all obligations of both parties arising from the subscription contract. After such settlement that contract was satisfied, and was no longer executory by either party. The delay of three and a half months in completing the road, known to defendant at the time of the settlement, must have been considered of no consequence injurious to the defendant, or excusable, as found by the court. Furthermore, there is no foundation in the answer for a counterclaim, or a recoupment of damages on account of the delay, as to which the whole substance of the answer is as follows: If the road had been completed as in the contract provided, the defendant would have been able to sell his property "at greatly enhanced price over what it was then worth with-

out said railroad, and over what it is now worth with said railroad"; and "defendant could, during the month of December, 1887, and before signing said contract and notes, have sold his said land at a greater price than he could at the time of the alleged completion of said road, or at any time since." It thus appears that there was a decline in the market value of defendant's land between the written date of the contract and the completion of the road; but whether such decline occurred during the four months within which the road was to have been completed or later is not stated; nor is it alleged that the delay in constructing the road caused any decline in the market price of defendant's land, nor that defendant would have sold his land at any price, even if the road had been completed within the contract period. That the court properly excluded proof of these averments in the answer is too obvious to admit of question. (*Pendleton* v. *Cline*, 85 Cal. 142.)

The findings of fact by the court are fully justified by the evidence.

I think the order and judgment should be affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the order and judgment are affirmed.

McFARLAND, J., TEMPLE, J., HENSHAW, J.