[No. B222941. Second Dist., Div. Seven. May 31, 2011.]

Conservatorship of the Person and Estate of MARY BUCHENAU.
MARVIN J. SOUTHARD, as Public Guardian, etc., Petitioner and
Respondent, v.
MARIO TORNEL et al., Objectors and Appellants.

## COUNSEL

Law Offices of Robert D. Wilner, Robert D. Wilner; and James Ellis Arden for Objectors and Appellants.

Susan Long, Deputy County Counsel, for Petitioner and Respondent.

## OPINION

**WOODS, J.**—Appellants Mario Tornel and Martha A. Silva purchased a home from Mary Buchenau in a public auction conducted by respondent Public Guardian of Los Angeles County in his capacity as conservator of her estate. The probate court confirmed the sale to appellants, but the parties thereafter failed to consummate the sale by the end of a 60-day escrow period. Respondent then instituted a proceeding to vacate confirmation of the sale to appellants, authorize a resale of the property, and allow respondent to retain appellants' bid deposit. The probate court ruled that appellants had breached their agreement to purchase the property. It authorized respondent to retain appellants' bid deposit and, separately, ordered appellants to pay $60,062 to the Buchenau estate in damages. Appellants bring this appeal from those orders on two grounds: first, that the probate court abused its discretion in refusing to set aside its finding that they had breached the purchase agreement; and second, that the court was collaterally estopped from finding against them by virtue of its ruling in a similar proceeding in which respondent was involved. As we shall explain, appellants have failed to demonstrate that the court abused its discretion in refusing to set aside its finding they had breached the purchase agreement or in rejecting the application of collateral estoppel. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

The underlying facts of this case were essentially undisputed in the lower court. On May 3, 2008, appellants made a formal bid to purchase Mary Buchenau's former residence located at 7249 Shoshone Avenue in Van Nuys, California (the Shoshone property), for the sum of $254,000. Respondent, conservator of the Buchenau estate, accepted their bid and the probate court confirmed sale of the Shoshone property to appellants on August 1, 2008. Immediately thereafter, escrow was opened for the purpose of consummating the sale. The escrow instructions provided that appellants would first deposit $25,400 (10 percent of the purchase price) with respondent and that the remaining $228,600 was to be paid directly to the escrow holder no later than "two working days prior to close of escrow." Also before the close of escrow, respondent was to deliver to the escrow holder all instruments necessary for transfer of title. The scheduled escrow closing date was September 30, 2008.[1]

---

[1] Appellants designated an "Appellants' Appendix" as the record in this case pursuant to California Rules of Court, rule 8.124. Their prepared appendix, however, did not include a copy of the escrow instructions for the sale of the Shoshone property, which had been filed in the superior court and which provide contractual terms central to this dispute. As such, this

Concurrent with the above transaction, Ed Santiago[2] bid on and purchased a piece of property located at 9323 Cayuga Avenue in Sun Valley, California (the Cayuga property), from the estate of Lilly Lathem. Respondent was also the conservator of the Lathem estate. Appellants claim[3] that after confirmation of the sale was entered on August 1, 2008, escrow was opened under similar terms as those used in the escrow for the Shoshone property: Mr. Santiago was to deposit 10 percent of the purchase price, with the remaining sum due two days before escrow was set to close on September 30, 2008.

On or around August 22, 2008, appellants made the required 10 percent deposit for purchase of the Shoshone property with the escrow holder, as did Mr. Santiago for purchase of the Cayuga property. However, by the scheduled closing date of September 30, 2008, neither appellants, Mr. Santiago, nor respondent had tendered performance to either escrow holder for either property. On October 15, 2008, Mr. Santiago wrote the escrow company on behalf of himself and appellants, requesting that both escrows be cancelled and that their deposits be refunded. Respondent eventually tendered the deed to the Cayuga property to the relevant escrow on October 17, 2008, and the deed to the Shoshone property on October 19, 2008—roughly 20 days late. However, even after the deeds were tendered, appellants and Mr. Santiago refused to consummate either purchase, insisting instead that the escrows be cancelled and their deposits returned.

B. *Procedural Background*

After it became clear that neither appellants nor Mr. Santiago intended to go through with their respective purchases, respondent filed petitions to vacate the orders confirming the sales of the Shoshone and Cayuga properties so that they could be marketed to new buyers. Additionally, respondent requested authority to retain both bid deposits and to be awarded damages pursuant to section 10350 of the Probate Code.[4]

---

Court on its own motion augmented the record with the escrow instructions under California Rules of Court, rule 8.155(a)(1)(A) (augmenting with documents filed in the superior court).

[2] Mr. Santiago is not a party to this action.

[3] Again, some relevant documents (including escrow instructions) relating to the sale of the Cayuga property were not made part of the record on appeal. However, appellants urge that the sale was conducted in identical fashion to the sale of the Shoshone property, and that Mr. Santiago acted on their behalf in purchasing the Cayuga property.

[4] Probate Code section 10350, subdivision (a) provides that "[i]f after court confirmation of sale of real or personal property the purchaser fails to comply with the terms of sale, the court may, on petition of the personal representative, vacate the order of confirmation, order a resale of the property, and award damages to the estate against the purchaser."

The first of these petitions, involving the sale of the Cayuga property to Mr. Santiago, came before the probate court on December 5, 2008 (the *Lathem* proceeding). Present at this hearing were respondent, a representative from the company which conducted the auction, and Mr. Santiago himself. After hearing from the auction company's representative that the deed had not been deposited into escrow until 15 to 20 days after the scheduled escrow closing date, the court ruled that respondent had therefore not performed under the contract and that Mr. Santiago was entitled to a refund of his deposit. After a brief exchange with respondent on the issue,[5] the court vacated the order to confirm the sale, authorized respondent to resell the property, and ordered it to return Mr. Santiago's deposit.

The second petition, involving the sale of the Shoshone property to appellants, came before the probate court on January 9, 2009. Appellants failed to appear at this hearing. As they had likewise filed no written objection, the court approved respondent's petition and ordered that the sale of the Shoshone property be vacated, authorizing respondent to resell the property and to retain appellants' deposit. The matter was then continued, pending resale of the property, for a hearing on the estate's damages resulting from the failed transaction.

Before the hearing on damages could take place, appellants filed a motion under Code of Civil Procedure section 473, subdivision (b) to set aside the order authorizing respondent to retain their deposit.[6] Appellants' attached declarations asserted that they had been present in court on the day of the January 9, 2009 hearing, but failed to realize that their case had been called due to "confusion" in the court. The motion was heard by the probate court on March 17 and March 19, 2009. At both hearings, the court indicated that it was willing to allow appellants to go forward with the sale at the original agreed-upon price, or in the alternative to hear any evidence that respondent had breached the purchase agreement by failing to perform. Although appellants stated that they had the money to consummate the purchase on hand, they declined to go forward. Appellants claimed that they could provide proof that respondent had failed to perform and thus breached the purchase agreement. Further, they argued, the probate court was estopped from finding that appellants had breached the purchase agreement with respondent by

---

[5] "The Court: . . . The contract said escrow will last X number of days. . . . At the end of X number of days, the County wasn't able to perform. . . . It appears to me it's a contract, and if you can't perform your end of the contract, [Mr. Santiago] has a right to say I'm not interested, unless you have authority to the contrary. Do you have any authority to the contrary?
"[Counsel for respondent]: Not at this time, your Honor."

[6] Code of Civil Procedure section 473, subdivision (b) provides that "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

virtue of the court's prior decision in the *Lathem* proceeding (i.e., that respondent had breached its contract with Mr. Santiago). At the close of the March 19, 2009 hearing, the court declined to set aside its order vacating the sale of the Shoshone property but continued the matter for an evidentiary hearing to allow appellants to show proof that respondent had failed to perform.

On July 21, 2009, an evidentiary hearing was held after full briefing on two issues: first, whether respondent had failed to perform under the purchase agreement; and second, whether the principle of collateral estoppel required the court to find respondent in breach and order the return of appellants' deposit. After review of the briefs and the evidence presented at the hearing, the court again declined to set aside its factual determination that appellants, not respondent, had breached the purchase agreement. However, it reserved its decision on the collateral estoppel issue for further briefing and review of the transcript in the *Lathem* proceeding.

On September 17, 2009, following a second round of briefing, the court heard appellants' argument on the collateral estoppel issue and took the matter under submission. On September 29, 2009, the court rejected appellants' collateral estoppel argument and entered an order denying their request for return of their deposit. With appellants' Code of Civil Procedure section 473, subdivision (b) arguments disposed of, the focus of the matter returned once more to the issue of the estate's damages resulting from the failed transaction. However, because the Shoshone property had still not been resold, the hearing on the issue of damages was continued to a later date.

By December 31, 2009, the Shoshone property had been resold and the court held a hearing on the issue of damages. After the hearing, on January 13, 2010, the court entered an order finding appellants liable in the amount of $60,062: $33,000 for the difference between the contract price on the sale to appellants and the price obtained on resale, and $27,062 in insurance, taxes, attorney's fees, and other consequential damages resulting from appellants' breach. (Prob. Code, § 10350, subd. (e).) Appellants' initial deposit of $25,400 was used to offset the damage award, resulting in a net unsatisfied judgment of $34,662.

Appellants filed this appeal on March 9, 2010, challenging the orders "(1) denying return of deposit and (2) granting damages."

## DISCUSSION

 In support of their claim that they are entitled to a return of the bid deposit, appellants set forth two substantive arguments in their brief. First, they argue that the probate court abused its discretion in refusing to set aside its finding that they had breached the purchase agreement. Second, they claim that the probate court was required, by virtue of its prior finding in the *Lathem* proceeding, to find in their favor under the equitable principle of collateral estoppel. For the reasons articulated below, we reject both arguments.

### 1. *Abuse of Discretion*

In their opening brief, appellants frame their appeal of the order authorizing the retention of their bid deposit as a challenge to the probate court's apparent denial of their motion for relief under Code of Civil Procedure section 473, subdivision (b) (relief from a proceeding taken against the party "through his or her mistake, inadvertence, surprise, or excusable neglect"). As the discretion to grant or deny a Code of Civil Procedure section 473, subdivision (b) motion is soundly vested in the trial court, we may only disturb its ruling by finding that the court abused its discretion. (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233 [211 Cal.Rptr. 416, 695 P.2d 713]; *Generale Bank Nederland v. Eyes of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1399 [72 Cal.Rptr.2d 188].)

Appellants filed their Code of Civil Procedure section 473, subdivision (b) motion after failing to appear at the January 9, 2009 hearing at which the probate court approved respondent's petition to vacate the order confirming the sale of the Shoshone property and retain appellants' deposit. Their attached declarations asserted that they were present in court on that day to oppose respondent's petition, but did not hear their case called because of excessive movement in the courtroom, the shuffling of files, and their imperfect mastery of the English language. As a result, they seem to argue, they were denied their "day in court" to oppose the petition to withhold their deposit.

The Code of Civil Procedure section 473, subdivision (b) motion was heard on two separate dates: March 17, 2009, and March 19, 2009. At these hearings, appellants were given the choice to either go through with the sale at the contractually agreed-upon price or to show evidence that respondent had failed to perform its own obligations under the contract. They were given another evidentiary hearing on the matter on July 21, 2009, as well as an

opportunity to brief the issue. Thus, appellants had no fewer than three chances to argue that respondent was at fault for the failure to consummate the sale by the scheduled escrow closing date, not they—the exact argument they would have been required to make at the January 9, 2009 hearing had they appeared. Appellants suggest that the proper procedure would have been to immediately grant their motion for relief and set aside the order authorizing respondent to retain their deposit, then rehear respondent's petition (at which point their arguments would have been rejected just as they were on Mar. 17, Mar. 19, and July 21). We cannot agree that it was an abuse of discretion for the probate court to simply hear appellants' argument on the merits before choosing to set aside the January 9, 2009 order, rather than go through the more procedurally onerous task of first setting aside the order and then rehearing the original petition.

▪ Further, even if we were to review appellants' argument for return of their deposit de novo, we would come to the same conclusion. It is well established that "if it is not clearly specified that time is of the essence in an escrow transaction, a 'reasonable time' is allowed for performance of the escrow conditions." (3 Miller & Starr, Cal. Real Estate (3d ed. 2010) § 6:24, p. 6-106, citing *Witmer Brothers Co. v. Weid* (1895) 108 Cal. 569, 577 [41 P. 491] and *Miller v. Cox* (1895) 96 Cal. 339, 343 [31 P. 161].) The escrow instructions for the sale of the Shoshone property did not include a "time is of the essence" clause. Of course, an essential time for performance may be implied when so required by the very nature of the underlying contract. (*Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust* (1985) 168 Cal.App.3d 818, 825–826 [214 Cal.Rptr. 531].) However, we are not persuaded that the nature of a contract for the sale of real property—even with property values plummeting, as they were in 2008—requires as much. Surely a "time is of the essence" clause cannot be implied simply to protect a buyer or seller of real property from a poor investment decision.

▪ Here, neither party tendered performance to the escrow holder by the scheduled closing date of September 30, 2008. However, respondent tendered performance on October 19, 2008. Appellants presented no evidence at the trial level that a delay of 19 days following a two-month escrow was an unreasonable time for performance under the circumstances. Their purported cancellation of the escrow via e-mail to the auction company on October 15 was ineffective, as "even if time for performance has expired, a party cannot claim default by the other party as justification to terminate the escrow without either performing or having tendered performance to the other party." (3 Miller & Starr, Cal. Real Estate, *supra*, § 6:25, p. 6-108, fns. omitted.) As such, their refusal to consummate their contractual obligation to purchase the Shoshone property for $254,000 was rightly considered a breach of contract

by the probate court, and it was thus proper to authorize respondent to retain their bid deposit in order to ensure that it would be available to offset a future damages award.

### 2. *Collateral Estoppel*

■ Appellants also argue that the probate court was bound to rule in their favor under the principle of collateral estoppel. Collateral estoppel (also known as "issue preclusion") is a judicially created doctrine which operates to bar the relitigation of issues previously adjudicated in order to limit harassment and preserve judicial resources. Appellants claim on appeal, as they did in the lower court, that the judgment rendered in the *Lathem* proceeding on December 5, 2008—where the probate court ruled that respondent had failed to perform under its contract to sell the Cayuga property to Ed Santiago—was preclusive upon the January 9, 2009 and later orders finding that appellants, not respondent, had breached the contract for the sale of the Shoshone property.

■ The lower court's conclusion that the doctrine of collateral estoppel did not apply in this case is a question of law subject to de novo review. (*Noble v. Draper* (2008) 160 Cal.App.4th 1, 10 [73 Cal.Rptr.3d 3]; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800–801 [35 Cal.Rptr.2d 418, 883 P.2d 960].) The party or parties who assert the bar of collateral estoppel—here, appellants—bear the burden of demonstrating each of its elements. (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 617 [41 Cal.Rptr.3d 686]; *Lucido v. Superior Court* (1990) 51 Cal.3d 335 [272 Cal.Rptr. 767, 795 P.2d 1223].) Under California common law, an earlier ruling will be given preclusive effect if " '(1) [a] claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding.' " (*People v. Barragan* (2004) 32 Cal.4th 236, 253 [9 Cal.Rptr.3d 76, 83 P.3d 480].) Appellants have not met their burden to demonstrate the first or the third element of collateral estoppel.

The first element of collateral estoppel requires that the issue sought to be precluded be identical to one litigated in the prior adjudication; i.e., it asks whether " 'identical factual allegations' " were at stake in the two proceedings. (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481 [111 Cal.Rptr.2d 870].) Although appellants urge that this is the case, they have not produced either facts or authority to support their position. To determine if "identical factual allegations" were at issue here and in the *Lathem* proceeding, the facts and circumstances relating to each auction, each purchase agreement, and each escrow would need to be laid out for our review.

However, appellants did not include any of this evidence in the appellate record. Indeed, the only evidence of the transaction for the sale of the Cayuga property is a brief five-page transcript of the court's hearing on respondent's petition to vacate that sale, along with a minute order reflecting the court's ruling. Because the Shoshone and Cayuga properties are wholly different parcels of real property and were sold in separate transactions, we cannot conclude that the facts of each transaction were identical without proof of such. For example, it is entirely possible that respondent's delay in furnishing the deeds to escrow was reasonable given the circumstances of this case, yet may have been unreasonable given the circumstances regarding the sale of the Cayuga property. Thus, appellants have not satisfied their burden of establishing "identical factual allegations" in this and the *Lathem* proceeding. On this basis alone, we conclude that the principle of collateral estoppel does not apply in the instant case.

■ Nonetheless, appellants have also failed to establish the third element of collateral estoppel which requires that the party against whom preclusion is now sought was a party or in privity with a party to the prior proceeding. Appellants argue that although the Buchenau estate was not a party in the *Lathem* proceeding, the fact that respondent was the conservator of both the Buchenau and Lathem estates establishes the requisite privity between the two for purposes of collateral estoppel. We disagree. The concept of "privity" is highly dependent upon the facts and circumstances in each case, but generally " 'involves a person so identified in interest with another that he represents the same legal right.' " (*Zaragosa v. Craven* (1949) 33 Cal.2d 315, 318 [202 P.2d 73].) Moreover, the "circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication." (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].) ■ There is no reason that any conservatee should expect to be bound by a ruling issued against its conservator in its capacity as conservator of a completely different estate; especially when, as in this case, the conservator serves this role for numerous other parties. Further, as respondent is not the real party in interest in this or any case, but merely "stands in the shoes" of its conservatees, any and all contractual rights under the breached purchase agreement must be said to belong to each individual party in interest (the conservatee) and not respondent itself. Appellants have not cited to any relevant authority to the contrary. As such, appellants have likewise failed to carry their burden of establishing privity between the Buchenau and Lathem estates.

For the foregoing reasons, the probate court correctly denied appellants' motion to set aside its January 9, 2009 order authorizing respondent to retain their bid deposit upon the theory of collateral estoppel.

## *DISPOSITION*

The order of the probate court is affirmed. Respondent is entitled to its costs on appeal.

Perluss, P. J., and Zelon, J., concurred.