Filed 9/15/16  Welsh v. Welsh CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| STACEY WELSH,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>JOHN WELSH et al.,<br><br>          Defendants and Respondents. | A145155<br><br>(Marin County<br>Super. Ct. No. FL1304291) |

Stacey Welsh appeals from an order reducing the monthly amount of child support that her former husband, John Welsh, is obligated to pay her.  We reverse an erroneous computation of Stacey's gross income used in calculating child support as well as a ruling regarding Stacey's tax filing status, which the parties agree was mistaken, and we remand to the trial court so that it can recalculate its support order in those two respects only.  We otherwise affirm the trial court's order.

I.

FACTUAL AND PROCEDURAL
BACKGROUND

Stacey and John[1] were married for 12 years, and they have three children, one of whom apparently became emancipated during the pendency of these proceedings.  After the couple separated, they signed a marital settlement agreement, which was entered as a judgment by the San Francisco Superior Court in 2009 (the San Francisco proceedings).

---

[1] We refer to the Welshes by their first names for purposes of clarity because they share the same surname.  (*Rubenstein v. Rubenstein* (2000) 8l Cal.App.4th 1131, 1136, fn. 1.)

1

Among its terms, the agreement required each party to "continue to pay for childcare costs incurred during his or her own custodial time with the children."

In early January 2011, John moved to New York and agreed to pay child support to Stacey. Stacey subsequently asked the court to increase the amount of this support. A written statement of decision was filed in September 2012 (the September 2012 order) in the San Francisco proceedings, and the order was subsequently adopted with additional written findings.

In the September 2012 order, the San Francisco trial court found that John's "relocation to New York warrant[ed] a modification of the original . . . zero child support agreement." The court found that "both parties' circumstances have changed substantially," and it concluded that the change justified a deviation from the application of the uniform child support guideline established under Family Code section 4055.

In determining John's gross income, the San Francisco trial court included income that John was receiving annually from two trusts, payments he was receiving from his mother for him to pay his rent, and an annual recurring gift from his mother. In determining Stacey's gross income, the court considered assets related to four Hawaii real estate partnerships. The court found that Stacey had "failed to produce information related to her interest in [these] partnerships," but it nonetheless declined to include taxable income that Stacey had received in the amount of $40,656 from the partnerships "for the purpose of calculating child support, because of the resulting tax liability. . . . The fact that these distributions were used to pay taxes is relevant. The aggregate distributions will not be treated as annualized income available for support." Our appellate record does not include a complete record of the San Francisco proceedings, and we do not know the full extent of the information and documents before the trial court at the time of its ruling. We do not know, for example, whether the court was provided with a copy or summary of Stacey's tax return. Ultimately, the court ordered John to pay $4,500 per month in child support, which was an upward deviation from the uniform guideline and based on John's "substantial wealth." No appeal was taken from the September 2012 order.

John subsequently moved in the San Francisco proceedings for a reduction of his child support obligation.  In July 2013, when it continued the hearing on John's motion, the trial court ruled that "[f]or this court to consider a change of circumstance for purposes of determining whether child support payments should be modified, [John] needs to show that whatever factors [the court] took into consideration in making [its] determination [in the September 2012 order] that [John] is a man of substantial wealth no longer are there."  It summed up by stating, "The Court will be ruling on whether there has been a change of circumstance such that the Court would consider a modification." The hearing, however, was never held because John withdrew his motion the following month.

In August 2013, John registered his child support obligation with the Department of Child Support Services (DCSS) in San Francisco under Family Code section 17400, which requires the DCSS to "take appropriate action . . . [to] enforce child support . . . orders" when requested.  (Fam. Code, § 17400, subd. (a).)  Subsequently, Stacey and the children living with her moved to Marin County, and the administrative responsibility to enforce the parties' child support obligations was accordingly transferred to the Marin County DCSS.

John then filed a declaration with the Marin County DCSS stating there had been a significant change of circumstances since the September 2012 order warranting a reduction of his child support obligation.  (Cal. Code Regs., tit. 22 § 115535.)  In response, the Marin County DCSS in June 2014 filed a motion requesting a modification of child support.  The hearing, although delayed as a result of disputes over discovery and requests for sanctions, was eventually heard on December 19, 2014.  A 14-page statement of decision was entered on March 11, 2015 (the March 2015 order), and it is this order from which Stacey appeals.  The order determined John's monthly taxable gross income to be $23,499.  This was composed of $10,999 in monthly income from two trusts and $12,500 attributed to John in monthly wages.  The order determined Stacey's monthly taxable gross income to be $39,254.  This was composed of $31,903 in monthly wages and $7,351 that was attributed to Stacey as monthly investment income related to her

partnerships. The $7,351 was one-twelfth of $88,212, which was the amount of investment income reported in Stacey's 2013 federal tax return. The order also determined that the child support calculations should include a tax-filing status for Stacey as "head of household with the children as exemptions."

In accordance with the March 2015 order, the DCSS calculated child support under the uniform guideline, and this calculation reduced John's monthly child support payment to $2,478 (down from the $4,500 per month in the September 2012 order), which was adopted by the trial court.

## II.
### DISCUSSION

*A.     The Standard of Review.*

We presume the correctness of trial court orders and indulge all intendments and presumptions to support them on matters as to which the record is silent. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) The party appealing from an order has the burden to affirmatively show error. (*Ibid.*)

In considering the modification of a child support order, "[o]ur review is limited to determining whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion. [Citation.] We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order. [Citation.]" (*In re Marriage of de Guigne* (2002) 97 Cal.App.4th 1353, 1360 (*de Guigne*).) We exercise our independent judgment on "pure questions of law, such as procedural matters or interpretations of rules or statutes. . . . [Citations.]" (*Gordon's Cabinet Shop v. State Comp. Ins. Fund* (1999) 74 Cal.App.4th 33, 38.)

*The Trial Court Was Not Estopped from Modifying the September 2012 Order Regarding Stacey's Partnership Assets.*

Stacey first argues that the trial court was collaterally estopped from including investment income generated from her partnerships in her gross income available for child support because the San Francisco Superior Court had excluded partnership-related assets from her income in the September 2012 order. She contends that, as a result of the September 2012 order, "all K-1 income, the respective tax liability, and cash distributions [related to the partnerships] are to be excluded from income available for child support." We are not persuaded.

Collateral estoppel, also known as issue preclusion, prohibits a party from relitigating any issue litigated and finally decided in an earlier action or motion between the same parties. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 & fn. 3.) The essential elements required for its application are threefold: "(1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797.) These elements were not satisfied here both because the September 2012 order was not a final determination, and because Stacey failed to satisfy her burden of proving that the issue of the treatment of the partnership-related assets was identical.[2]

The September 2012 order was not final for purposes of the application of collateral estoppel. For starters, the trial court's statement that "aggregate distributions [from these partnerships] will not be treated as annualized income available for support" was made in the context of determining the amount of income that was then available to Stacey for child support. We do not construe the statement to amount to a ruling, as

---

[2] In light of this conclusion, we need not and do not decide whether the DCSS and John are in privity for purposes of collateral estoppel, but we observe that the DCSS, unlike John, represents the public interest in matters of child support. (Fam. Code, § 17406, subd. (a); *Monterey County v. Cornejo* (1991) 53 Cal.3d 1271, 1284.)

Stacey insists, that taxable income generated by the partnerships was to be categorically and forever excluded from future child support adjustments.

But even if we were to give the statement such a construction, we would conclude that the ruling was not binding. By statute, child support orders are generally modifiable "at any time as the court determines to be necessary." (Fam. Code, § 3651, subd. (a).) A dissolution remains pending throughout a child's minority for purposes of child support, and domestic-relations judgments are typically not considered to be "final" adjudications of the extent of the parents' obligation to support their child. (*In re Marriage of Armato* (2001) 88 Cal.App.4th 1030, 1040-1042.) Thus, as a matter of law, courts are free to reconsider prior rulings regarding child support.

Furthermore, Stacey has failed to prove that the issue of the treatment of the partnership-related assets was identical for purposes of the two orders. (*Conservatorship of Buchenau* (2011) 196 Cal.App.4th 1031, 1040-1041 [party failed to show identity of issues or of parties because necessary evidence not included in record on appeal].) She did not satisfy this burden because the information given to the San Francisco court for the September 2012 ruling was incomplete, and our appellate record does not even include all of that incomplete information.

In the September 2012 order, the court noted that it was "unable, given the limited information provided by [Stacey] concerning these partnerships, to determine the exact value of these partnerships and whether [Stacey] is able to receive additional income from these assets." Based on this limited information, the court agreed with Stacey that partnership distributions "should not be considered for the purpose of calculating child support, because of the resulting tax liability . . . [, and it ordered that t]he aggregate distributions will not be treated as annualized income available for child support." But the court's reference to "these distributions" is ambiguous, especially in light of the court's corresponding references to "the exact value of these partnerships" and Stacey's ability "to receive additional income from these assets." Our appellate record simply does not reflect what information or material was provided to the court when it entered its ruling.

6

Our record of the information provided to the Marin County trial court for purposes of the March 2015 order is more complete. But while from the record we *can* conclude that the parties' overall economic circumstances changed, we *cannot* conclude that the specific issue of the treatment of the partnership-related assets was identical. Although Stacey was found to have underreported her income, the record shows that her income "*more than tripled*" since the September 2012 order.[3] (Italics in original.) Ultimately, the court set Stacey's monthly wages at $31,903 by relying on Stacey's actual wage stubs. This amount, which Stacey does not challenge on appeal, increased her monthly wages from the $6,357 that the court set as her monthly wages in the September 2012 order. As the trial court succinctly put it, "[t]here can be no doubt this [Stacey's increased income] reflected a dramatic change in circumstances."[4]

Specifically as to Stacey's partnership assets, the court similarly found "a problem with disclosure . . . [Stacey] completely ignores these assets in her Income and Expense declaration and at the hearing professed to not knowing the fair market value of the assets or of her interest in these family run entities. Assuming a modest rate of return, the $69,825 net rental income to [Stacey] reflects an interest of substantial value and should have been properly disclosed. . . . [Stacey] cannot choose to shelter her assets [allowing accumulation of her wealth] while vehemently asserting that John should not only be attributed with a rate of return on his assets but also liquidate his assets. . . . Accordingly, if this court is going to attribute John with actual passive earnings on his trust asset, it will attribute [Stacey] with the actual passive earnings on her assets [] as well."

---

[3] As to wages, the court found that "[t]he gross difference between [Stacey's] wage stubs and the Income and Expense Declaration submitted to this court represent a substantial underreporting of income by [Stacey]."

[4] Furthermore, the record reflects a substantial change in the source of John's income. In November 2014, John's mother died. Accordingly, he no longer received two of the components of his gross income as determined by the trial court in the September 2012 order: monthly rent payments and an annual gift from his mother. Offsetting this loss of income, John became the beneficiary of a new, $4.1 million trust.

7

Ultimately, the court set Stacey's net monthly investment income based on the exact amount of investment income that Stacey herself had reported in her 2013 tax return. An attachment to Stacey's tax return entitled "Net Investment Income Tax, Individuals, Estates and Trusts" showed that Stacey reported total investment income of $88,212. Dividing this total by 12 months, the court found that "[Stacey's] 2013 tax return reflects $7,351 per month in partnership and other investment income and the court will use that figure as the presumptively correct amount."

Under these circumstances, and on the record before us, we cannot conclude that Stacey satisfied her burden of proving that the issue of the treatment of her partnership interests was identical for purposes of the two rulings. Accordingly, we reject her argument that principles of collateral estoppel prevented the trial court from including in its March 2015 order the investment income Stacey reported on her 2013 tax return as part of her gross income.

B.      *The Trial Court Did Not Abuse Its Discretion by Including Stacey's Reported Investment Income as Part of Stacey's Gross Income Available for Child Support.*

Stacey next argues that the trial court abused its discretion by including the investment income reported in her 2013 tax return as part of her gross income. She argues that this income should have been excluded because more than half of it was "phantom" (not actually distributed to her), and the other half, although distributed to her, was used to pay tax liability. According to Stacey, "the net result . . . was that there was no income available for child support related to [her] interests in the partnerships." Again, we are not persuaded.

1.      *The law governing the calculation of child support.*

California has a strong public policy in favor of adequate child support and that policy is expressed in statutes establishing a uniform child support guideline. (*In re Marriage of Bodo* (2011) 198 Cal.App.4th 373, 385; see Fam. Code, §§ 4050-4076.) Under the guideline, courts are required to calculate child support by applying the

mathematical formula contained in Family Code section 4055.[5] The amount established by the formula is presumptively correct, and the court cannot deviate from it unless there are special circumstances. (*Bodo*, at pp. 385-386; *de Guigne*, *supra*, 97 Cal.App.4th at p. 1359.)

Income is "broadly defined" for the purpose of calculating child support under the uniform guideline. (*In re Marriage of Cheriton*, *supra*, 92 Cal.App.4th at p. 285.) But while broad, it is not limitless. (*In re Marriage of Pearlstein* (2006) 137 Cal.App.4th 1361, 1372.) "Generally, the types of income specified in the statute consist of money that the support obligor actually receives, and do not include unrealized increases in the value of assets." (*Ibid.*; see also *In re Marriage of Henry* (2005) 126 Cal.App.4th 111, 118 [increase in equity in residence does not constitute income or earning capacity]; *In re Marriage of Scheppers* (2001) 86 Cal.App.4th 646, 651 [same regarding gift of life insurance benefits].) At the same time, a court can reject a parent's attempt to minimize child support obligations by structuring income and personal-expense payments through a business owned or controlled by the parent. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2014) ¶ 6:205.5.)

The uniform guideline distinguishes between net and gross monthly income. The calculation under the guideline "is predicated on each parent's 'net monthly disposable income' [citation], which has been characterized as the 'key financial factor' in the formula. [Citation.]" (Hogoboom & King, *supra*, ¶ 6:195; see also Cal. Rules of Court, rule 5.275(b).) " '[N]et monthly disposable income' is a product of each parent's 'annual gross income' [citation] adjusted by allowed 'deductions' to yield 'annual net disposable income' [citation] and then divided by 12 [citation]. [Citations.]" (Hogoboom & King, *supra*, ¶ 6:195.)

The allowed deductions in determining the annual net disposable income include "[t]he state and federal income tax liability resulting from the parties' taxable income.

---

[5] In calculating spousal support, the trial court must consider each spouse's earning capacity, but the primary indicator of that capacity is income. (Fam. Code, § 4320, subd. (c); *In re Marriage of Cheriton*, 92 Cal.App.4th 269, 301.)

9

Federal and state income tax deductions shall bear an accurate relationship to the tax status of the parties (that is, single, married, married filing separately, or head of household) and number of dependents. State and federal income taxes shall be those actually payable (not necessarily current withholding) after considering appropriate filing status, all available exclusions, deductions, and credits." (Fam. Code, § 4059, subd. (a); see also *In re Marriage of Carlton* (2001) 91 Cal.App.4th 1213, 1218.) In other words, although gross income does not account for tax consequences, net monthly disposable income does.

          2.    *The Trial Court's Ruling.*

Applying this law to the trial court's ruling, we are left unconvinced by Stacey's argument that it was an abuse of discretion for the court to include the investment income reported in Stacey's 2013 tax return as part of her gross income because some of the income was allegedly phantom and the rest was allegedly used to pay tax liability.

To begin with, we have little trouble rejecting Stacey's argument as to the portion of the investment income that was purportedly used to pay tax liability because, as we have explained, under the uniform guideline tax considerations are immaterial for computing gross monthly income; those considerations become material in computing net monthly disposable income. Thus, the trial court did not abuse its discretion by including Stacey's reported taxable investment income as part of her gross income.

We next consider and reject Stacey's argument as to the portion of the investment income that allegedly was phantom. Because this income was reported as investment income on Stacey's 2013 federal tax return, a presumption arose as a matter of law that it should be includable as gross income available for child support. (See *In re Marriage of Scheppers*, *supra*, 86 Cal.App.4th at p. 650 ["Although federal law is not conclusive on the interpretation of section 4058, it is persuasive. . . ."].) Family Code section 4058 defines "gross income" with language that was "lifted straight from the definition of income in section 61 of the Internal Revenue Code." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 529.) "[Tax r]eturns are, after all, ultimately enforced by federal and state criminal penalties. Hence it is not surprising that tax returns are the core component

10

of determinations under the guideline formula." (*In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 332.)[6]

Although there is little case law governing the treatment of phantom income, what exists supports the conclusion that income reported on tax returns may generally be included as income for child support. For example, in *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, a father argued that his reported taxable income based on a "forgiveness of debt" should not be included as income available for child support because it was phantom in the sense that it was not received and spendable. In rejecting the argument, *Riddle* explained that "the child support laws (see Fam. Code, §§ 4058, 4059) are very exacting as to the definition of income . . . [and] the language was 'lifted' straight from the Internal Revenue Code. That means that if the tax laws say you have income because of the forgiveness-of-debt, you have income, and that forgiveness-of-debt income must go into the calculation of adjusted gross income under section 4058, subdivision (a), which in turn is the basis for income under section 4059, subdivision (a)." (*Riddle*, at p. 180.)

Because Stacey's reported investment income is presumed to be part of her gross income, the question becomes whether the trial court abused its discretion in effectively ruling that Stacey failed to rebut this presumption. We conclude that it did not. The primary evidence explaining the nature of the investment income was Stacey's testimony. In our view, the court properly could have found this testimony to be unconvincing and Stacey's credibility to be weak.[7]

Stacey's testimony was unconvincing because it reflected a shallow understanding of the partnership assets. Stacey did not know how many partners were in one real estate partnership, had "no idea" of the value of the real estate this partnership owned, and had

---

[6] Stacey ignores this presumption for purposes of her investment income, but she relies on it in arguing that the trial court was incorrect in ruling on her tax-filing status. (See Section II.D., *post*.)

[7] On February 10, 2016, John filed an unopposed motion to augment the record with sealed documents presented to the trial court that he argues are relevant to Stacey's credibility issues. The request is denied.

"no idea" of the value of her partnership interest when she received it, which "[m]aybe" was "in the 80's." The court dryly responded to this line of testimony by noting that Stacey's "qualifications as a financial expert are dropping." Regarding another real estate partnership, Stacey testified that she thought "this one has outside partners" and owned real estate in Honolulu, but "maybe not," and she did not know the actual value of the real estate it owned. Regarding a third partnership, Stacey testified that she did not know the type of business it was engaged in, but thought it "held real estate but is closing," possibly through a receivership. She testified that she had a $64,196 interest in that partnership but had "no idea" if this figure was a book or actual value.

The trial court also had reason to question Stacey's credibility. In the March 2015 order, it found that Stacey's "income is a bit of a moving target." According to the court, vagaries in Stacey's representations about her monthly earnings provided to the court in wage stubs, loan applications, and her income and expense and declaration were "only partially explained," and the differences between Stacey's "wage stubs and the Income and Expense Declaration . . . represent[] a substantial underreporting of income by [Stacey]." The court found this to be "particularly troubling since [Stacey] sought sanctions against John for his alleged failure to accurately report his earnings." During the hearing itself, the court alluded to credibility concerns. While testifying about the discrepancies in her earnings, Stacey remarked that "it's an issue of credibility," to which the court replied, "It certainly is, yes."

As to the partnerships' assets specifically, the trial court recounted that Stacey had testified that they "generate $69,825 in annual taxable income *to* [*Stacey*] per her attachment. [Stacey] testified/argued that she does not receive any of that income and that is all retained by the family business. [Stacey] . . . asks this court to not only completely disregard that income, but to reduce her 'income' because she has to pay taxes on the undistributed passive income and therefore does not actually have the money." The trial court continued, "There was also a problem with disclosure of this asset. [Stacey] completely ignores these assets in her Income and Expense declaration

12

and at the hearing professed to not knowing the fair market value of the assets or of her interest in these family run entities."

In short, the court was perfectly within its rights to find Stacey's testimony about the nature of her investments unconvincing and her credibility dubious. Under such circumstances, we cannot conclude that the trial court abused its discretion in effectively finding that Stacey failed to rebut the presumption that her reported investment income is part of her gross income available for child support.

C.    *Stacey's Capital Gains Should Not Have Been Included in the Final Child Support Calculation Because the Trial Court Had Ordered Them to Be Excluded.*

Stacey next argues that her income from capital gains was wrongly included in the final calculation of her gross income, and on this point we agree with her.

In the March 2015 order, the court found that "[Stacey's] 2013 tax return reflects $7351 per month in partnership and other investment income and the court will use that figure as the presumptively correct amount." It later explained that Stacey has "enjoyed recurring capital gains for 2010-2013 ranging from $110,000 to $17,800," but it decided that "[a]t this time the court will not include these recurring capital gains but they are certainly noted."

In its final order setting child support, however, Stacey's monthly investment income was set at $7,351, reflecting one-twelfth the *total* investment income reflected on Stacey's 2013 tax return, which was $88,212. But this total investment income included capital gains of $17,879, which the trial court had ruled were to be excluded. One-twelfth of $17,879 is approximately $1,490, and $7,351 reduced by $1,490 is $5,861. Thus, the correct amount of Stacey's monthly investment income that should be used to calculate child support obligations under the uniform guideline is $5,861, not $7,351. We remand to the trial court for entry of an order implementing this correction. Nothing in this remand, however, should be construed to be a constraint on the trial court's discretion whether to include or exclude capital gains in future child support calculations.

13

D.     *The Parties Agree that the Court Mistakenly Ruled that the Calculation of Child Support  Should Be Based on Stacey's Tax Filing Status as Head of Household.*

Stacey's 2013 tax return reflects a filing status as "Married, Filing Separately." The trial court acknowledged this status at the hearing on the motion giving rise to the March 2015 order.  But in an apparent oversight, the March 2015 order assigned Stacey a tax-filing status of "head of household with the children as exemptions" for purposes of calculating child support.

As John and the Marin County DCSS recognize on appeal, this assignment was incorrect.  Accordingly, we remand to the trial court for entry of an order correcting Stacey's tax filing status and clarifying the proper number of exemptions.

E.     *Stacey's Remaining Arguments Are Unavailing.*

Stacey asserts miscellaneous other arguments woven throughout her briefs, and we reject them all.  To begin with, she argues that proceeds from a real estate sale and certain rental income should have been excluded from her gross income.  But this argument is inexplicable because these assets were never counted as part of her gross income.  As we have explained, the March 2015 order only ascribed to Stacey's monthly gross income her monthly wages and the investment income reported on her 2013 income tax return (minus capital gains).  We similarly reject Stacey's argument that the court attributed to her an imputed earning capacity under Family Code section 4058, subdivision (b), because it did no such thing:  only *actual* wages and investment income—i.e., no imputed earnings—were attributed in determining Stacey's gross income.

We also reject Stacey's argument that there was no change of circumstances for purposes of the March 2015 order because prior orders had found that John had "substantial wealth."  Stacey argues that "for John to *prevail* on a motion for a downward modification [of child support], John must demonstrate a change to his substantial wealth as was determined by the prior order."  The argument is specious.  As we have discussed, the parties' economic circumstances changed significantly, and these changes justified a modification of child support.  Stacey's argument is premised on the mistaken belief that it makes no difference that after the entry of the prior orders, Stacey's income

14

dramatically increased and the source of John's income changed. Regardless of John's wealth, Stacey's increase in income alone was sufficient justification for a modification of child support obligations. This point was understood and properly applied by the trial court when it concluded in the March 2015 order that "[Stacey's] wages and salary have tripled if not quadrupled since the previous support order. This change alone is more than enough to constitute a change of circumstances."

Finally, we reject Stacey's argument that the trial court was required in the March 2015 order to impose child support payments on John higher than was calculated under the uniform guideline because he became the beneficiary of the new, $4.1 million trust after his mother died. Stacey claims that John's wealth was "wholly disregarded" by the trial court. She is flat wrong. In issuing the March 2015 order, the court was fully aware of, and carefully considered, the new trust. The court noted that "John actually receives $10,417 in monthly unearned income from this asset," and it ordered the income to be included as part of his gross income. This income was in fact included in the child support calculation made under the uniform guideline. While it is true that the trial court excluded the principal of this trust for purposes of calculating John's gross income, the court similarly excluded the principal of Stacey's assets, including the value of her partnership interests and her almost $1 million retirement account for purposes of calculating her gross income. In our view, the court's treatment of the parents' assets was reasonable and evenhanded, and it certainly did not constitute an abuse of discretion. We cannot conclude that the court ignored the best interests of the children by approving child support in an amount indicated by the uniform guidelines based on the income of two parents who, as the court found, both "enjoy significant wealth."

III.
DISPOSITION

John's motion to augment the record, filed on February 10, 2016, is denied.

The trial court's order is affirmed except we remand to the trial court solely for the entry of an order to recalculate child support after reducing Stacey's monthly gross income by $1,490, which is one-twelfth of the amount of Stacey's capital gains reported

15

on her 2013 tax return, and after correcting Stacey's tax filing status. The parties are not to litigate issues on remand that were, or could have been, raised in this appeal.

The parties shall bear their own costs on appeal.

_____
Humes, P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.


*Welsh v. Welsh* (A145155)

17